**Fred TABRIZI, Appellant,**

v.

**DAZ–REZ CORPORATION d/b/a El Maracumbe Restaurant, H.D. Hosseini, and Sima D. Hosseini, Appellee.**

No. 04–03–00387–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 4, 2004.

Rehearing Overruled Nov. 3, 2004.

Adam Poncio, Law Office of Cerda & Poncio, P.C., San Antonio, for appellant.

Sharon E. Callaway, Michael J. Murray, Crofts & Callaway, P.C., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice, and SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

Plaintiff Fred Tabrizi appeals a portion of a judgment granted in favor of Daz–Rez Corporation d/b/a El Maracumbe Restaurant, H.D. Hosseini, and Sima D. Hosseini ("Hosseini"). Hosseini brings a cross-appeal on a portion of the judgment granted in favor of Tabrizi. Because we hold that Tabrizi's first issue and Hosseini's cross-issue have merit, we modify the judgment of the trial court. As modified, we affirm.

### BACKGROUND

H.D. Hosseini owns Das–Rez Corporation, and Das–Rez Corporation owns El Maracumbe Restaurant. In 1987, Tabrizi came to work for El Maracumbe as a manager. He was paid a salary of $36,000 a year plus a bonus of forty percent of El Maracumbe's net profits. Tabrizi's bonuses ranged from $44,000 to $76,000 a year.

At some point, Tabrizi approached Hosseini about expanding the restaurant. Although Hosseini was initially reluctant, he eventually agreed to expand and took out a loan to pay for the costs of expansion. After the expansion was completed, the parties became aware that El Maracumbe was experiencing cash flow problems. So Hosseini and Tabrizi met with William Corley, the accountant. Corley told Hosseini that the reason the restaurant was running out of money was that in calculating net profit, El Maracumbe had not been deducting certain expenses, including the cost of paying off the note for the loan, from revenue. In order to fix this problem, Hosseini and Tabrizi made an agreement. The parties dispute, however, what the terms of that agreement were.

According to Hosseini, the parties agreed to deduct the cost of paying off the note from revenue prior to calculating net profit. Under the former method of calculating net profit, Hosseini contends, Tabrizi was receiving inflated bonuses. By agreeing to deduct the cost of paying off the note from revenue before calculating net profit, Hosseini argues, Tabrizi was merely agreeing to pay back his share of overdrawn bonuses.

Tabrizi views the agreement differently. According to Tabrizi, he and Hosseini agreed to forego their bonuses to cover the cost of the expansion at forty and sixty percent, respectively. In exchange for paying forty percent of the expansion, Tabrizi contends, the parties agreed that he would receive forty percent of future profits. In Tabrizi's view, this agreement made

him a part owner of El Maracumbe. He testified as follows:

> We were shortage [sic] about the money, expanding. They said I have to pay. Okay. I told Mr. Corley, I [asked] him, Mr. Corley, I will be glad to pay that. That's going to be my investment, but I would like [it] to be on [paper in] black and white.

Corley also testified at trial. He agreed with Hosseini that El Maracumbe was experiencing cash flow problems and that, in order to fix those problems, the parties agreed to convert the bonus calculation from a percentage of net income to a percentage of cash flow. He also agreed with Tabrizi that the parties agreed that Tabrizi would pay forty percent of the expansion of El Maracumbe in exchange for forty percent of El Maracumbe's future profits. He did not agree with Tabrizi's assertion, however, that this arrangement made Tabrizi a part owner in El Maracumbe. Corley also testified that the total costs of expansion exceeded $100,000 and that Tabrizi contributed at least $40,000.

Tabrizi left El Maracumbe on May 21, 1999. He subsequently brought suit against Hosseini for breach of contract, fraud, and negligent misrepresentation. He also alleged that the parties had formed an implied partnership.

### STATUTE OF FRAUDS

At trial, the jury found that Hosseini and Tabrizi had an implied agreement and that Hosseini failed to comply with the agreement. Arguing that enforcement of such agreement is barred by the statute of frauds, Hosseini filed a motion for judgment notwithstanding the verdict. The trial court granted the motion. In his first issue on appeal, Tabrizi argues that the trial court erred in granting Hosseini's motion for judgment notwithstanding the verdict.

■ A trial judge may grant a motion for judgment notwithstanding the verdict only when there is no evidence to support one or more of the jury's findings of fact necessary to the judgment. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex. 1990). In reviewing a trial court's decision to grant a motion for judgment notwithstanding the verdict, we must determine whether there is any evidence upon which the jury could have made a necessary finding of fact. In doing so, we review the record in the light most favorable to the finding of fact, considering only the evidence and inferences from that evidence that support the finding and rejecting the evidence and inferences that do not. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988) (per curiam) (citing *Alm v. Aluminum Co. of Am.,* 717 S.W.2d 588, 593 (Tex.1986)). We will sustain the granting of a motion for judgment notwithstanding the verdict if the record shows (1) the complete absence of evidence of a necessary fact, (2) the evidence offered to prove the necessary fact is no more than a mere scintilla of evidence, (3) the evidence conclusively establishes the opposite of the necessary fact, or (4) the rules of law or evidence bar consideration of the only evidence offered to prove the necessary fact. *See Anderson v. City of Seven Points,* 806 S.W.2d 791, 795 n. 3 (Tex.1991).

■ Here, Tabrizi argues that the statute of frauds does not bar enforcement of the implied agreement because such agreement could have been performed in one year. Whether an agreement falls within the statute of frauds is a question of law. *Gerstacker v. Blum Consulting Eng'rs., Inc.,* 884 S.W.2d 845, 849 (Tex.App.-Dallas 1994, writ denied).

Texas law provides that an agreement that is not to be performed within one year from the date of making the agreement is

not enforceable unless it is (1) in writing; and (2) signed by the person charged with the promise or agreement. TEX. BUS. & COMM.CODE ANN. §§ 26.01(a), 26.01(b)(6) (Vernon 2002).

■ Section 26.01(b)(6) does not apply if the contract, from its terms, could possibly be performed within a year. *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982) (per curiam) (if the agreement, either by its terms or by the nature of the required acts, cannot be performed within one year, it falls within the statute of frauds and must be in writing). To determine the applicability of the statute of frauds with indefinite contracts, a court may use any reasonably clear method of ascertaining the intended length of performance. *Gerstacker*, 884 S.W.2d at 850. The method is used to determine the parties' intentions at the time of contracting. *Id.* Where an oral contract omits the performance term, duration may properly be implied from extrinsic evidence. *Niday*, 643 S.W.2d at 920.

■ Here, Hosseini argues that because the term of the note was two years, the agreement could not be performed within a year. We disagree. The agreement to pay off a two-year note was not between Hosseini and Tabrizi but between Hosseini and his lender. Both Tabrizi and Corley testified that the parties agreed that Tabrizi would pay forty percent of the expansion of El Maracumbe in exchange for forty percent of El Maracumbe's future profits. It is certainly possible that Tabrizi could have paid forty percent of the expansion within a year by investing his bonuses—in fact, the record reflects that his yearly bonuses typically exceeded that amount.

■ Citing *Mann v. NCNB Tex. Nat'l Bank*, 854 S.W.2d 664, 668 (Tex.App.-Dallas 1992, no writ), Hosseini argues that the fact that Tabrizi *could* have paid forty percent of the note within a year does not remove the agreement from the ambit of the statute of frauds. *See id.* at 669 (loan agreement with three-year repayment term was within statute notwithstanding remote possibility that debtor would repay loan within year from its making). Unlike *Mann*, however, there is no evidence here that Hosseini and Tabrizi contemplated that performance of the agreement would exceed one year. Rather, the evidence reveals that the time period for performance was dependent on El Maracumbe's profits—in other words, that it was uncertain. Where the time of performance of a contract is uncertain and performance can conceivably occur within one year, the statute of frauds does not apply. *Walker v. Tafralian*, 107 S.W.3d 665, 668 (Tex.App.-Fort Worth 2003, pet. denied). Accordingly, we hold that enforcement of the alleged agreement is not barred by the statute of frauds and that Tabrizi should recover $36,913.00 on his breach-of-contract claim. We sustain Tabrizi's first issue.

### LOST PROFITS

At trial, the jury awarded Tabrizi $183,000.00 in lost profits for Hosseini's failure to comply with the alleged agreement. Arguing that Tabrizi failed to establish these damages with reasonable certainty, Hosseini filed a motion for judgment notwithstanding the verdict. The trial court granted the motion. On appeal, Tabrizi argues that the trial court erred in granting Hosseini's motion for judgment notwithstanding the verdict because the evidence establishes the amount of lost profits with reasonable certainty.

Again, in reviewing a trial court's decision to grant a motion for judgment notwithstanding the verdict, we must determine whether there is any evidence upon which the jury could have made a neces-

sary finding of fact. In doing so, we review the record in the light most favorable to the finding of fact, considering only the evidence and inferences from that evidence that support the finding and rejecting the evidence and inferences that do not. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988) (per curiam) (citing *Alm v. Aluminum Co. of Am.,* 717 S.W.2d 588, 593 (Tex.1986)). We will sustain the granting of a motion for judgment notwithstanding the verdict if the record shows (1) the complete absence of evidence of a necessary fact, (2) the evidence offered to prove the necessary fact is no more than a mere scintilla of evidence, (3) the evidence conclusively establishes the opposite of the necessary fact, or (4) the rules of law or evidence bar consideration of the only evidence offered to prove the necessary fact. *See Anderson v. City of Seven Points,* 806 S.W.2d 791, 795 n. 3 (Tex.1991).

■■■ Recovery for lost profits does not require that the loss be susceptible to exact calculation. *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.,* 877 S.W.2d 276, 279 (Tex.1994). However, the injured party must do more than show that it suffered some lost profits. *Id.* The loss amount must be shown by competent evidence with reasonable certainty. *Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994); *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 84 (Tex.1992). This is a fact-intensive determination. *Heine,* 835 S.W.2d at 84. At a minimum, opinions of lost-profit estimates must be based on objective facts, figures, or data from which the lost-profits amount may be ascertained. *Szczepanik,* 883 S.W.2d at 649; *Heine,* 835 S.W.2d at 84. Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates. *Heine,* 835 S.W.2d at 84.

■■■ Tabrizi testified to lost profits as follows:

> I would like to request, ask my forty percent investment in El Maracumbe. I would like to ask forty percent net profit since I left El Maracumbe. I would roughly say 1999 would be $35, $34,0000, 1999, because I have received some of it before I resign. Year 2000, $60,000; 2001, $60,000.... That was my average bonus I used to make yearly at El Maracumbe.

This evidence fails to provide a factfinder with sufficient data to determine lost profits with reasonable certainty. It is not based on objective facts, figures, or data from which the lost-profits amount may be ascertained. *Szczepanik,* 883 S.W.2d at 649; *Heine,* 835 S.W.2d at 84. Accordingly, we hold that the evidence of lost profits is legally insufficient to support an award of damages. We overrule this issue on appeal.

### FRAUD

At trial, the jury found that Hosseini committed fraud against Tabrizi and awarded Tabrizi $1,000.00 in damages. Arguing that there is no evidence Hosseini committed such fraud, Hosseini filed a motion for judgment notwithstanding the verdict. The trial court granted the motion. On appeal, Tabrizi argues that the trial court erred in granting the motion.

■■■ Citing *Southwestern Bell Telephone Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991), Hosseini argues that the trial court properly granted his motion because Tabrizi's claim sounds *only* in contract. *See id.* at 495 (quoting *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986)) ("The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty

or duties are breached. When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone."). Tabrizi, on the other hand, states that his claim sounds either in tort *or* contract: "The claims by Fred Tabrizi for negligent misrepresentation and fraud were pled in the alternative to the breach-of-contract/implied partnership claims." Therefore, because Tabrizi concedes that his claim for fraud was pled as an alternative to his breach-of-contract claim, and because we have determined that Tabrizi should recover damages on his breach-of-contract claim, we overrule this issue on appeal.

### NEGLIGENT MISREPRESENTATION

At trial, the jury found that Hosseini made a negligent misrepresentation on which Tabrizi justifiably relied and awarded Tabrizi $1,000.00 in damages. Arguing that there is no evidence Hosseini made such negligent misrepresentation, Hosseini filed a motion for judgment notwithstanding the verdict. The trial court denied the motion. In his one issue on cross-appeal, Hosseini argues that the trial court erred in failing to grant his motion for judgment notwithstanding the verdict.

Although Tabrizi did not file a reply brief, he states in his original brief that "[t]he claims by Fred Tabrizi for negligent misrepresentation and fraud were pled in the alternative to the breach-of-contract/implied partnership claims." Therefore, because Tabrizi concedes that his claim for negligent misrepresentation was pled as an alternative to his breach-of-contract claim, and because we have determined that Tabrizi should recover damages on his breach-of-contract claim, we hold that the trial court erred in failing to

grant Hosseini's judgment notwithstanding the verdict with respect to Tabrizi's negligent misrepresentation claim. We sustain this issue on appeal.

### IMPLIED PARTNERSHIP

At trial, the jury found that Hosseini and Tabrizi had an implied partnership. Arguing that there is no evidence of an implied partnership, Hosseini filed a motion for judgment notwithstanding the verdict. The trial court denied the motion. In its judgment, however, the trial court states:

> After the jury returned its verdict, Defendants Das–Rez Corporation d/b/a El Maracumbe Restaurant and H.D. Hosseini moved for judgment notwithstanding the verdict as to each of the jury's findings. Having concluded that the evidence is legally insufficient to support them, the court has previously ordered that certain jury findings should be disregarded, specifically ... the jury's findings that the parties had entered into an implied partnership agreement (Question 11).

On appeal, Tabrizi argues that if the trial court in fact granted the motion for judgment notwithstanding the verdict with respect to the implied partnership, such granting was error because there is legally sufficient evidence of an implied partnership. Because, however, Tabrizi pled implied partnership as an alternative to his breach-of-contract claim in his petition, and because we have determined that Tabrizi should recover on his breach-of-contract claim, we overrule this issue.[1]

### CONCLUSION

We modify the judgment as follows: with respect to Tabrizi's breach-of-contract

---

1. Additionally, we see no damages question or finding to correspond to the implied partnership finding.

claim, we order that Tabrizi recover $36,913.00 in damages. With respect to Tabrizi's negligent misrepresentation claim, we order that Tabrizi take nothing. As modified, the judgment of the trial court is affirmed.