**Opinion issued October 2, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00356-CV

————————————

**VALERI KOUKHTIEV, Appellant**

**V.**

**HELLENE V. HINER, Appellee**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-13952**

---

## MEMORANDUM OPINION

Valeri Koukhtiev appeals from a judgment on a jury's verdict that he breached an agreement with Hellene Hiner, arguing that the jury charge incorrectly omitted necessary legal elements from two questions over Koukhtiev's objection. We find no error in the charge. Accordingly, we affirm.

## Background

Koukhtiev and Hiner met while they were both married to other people. They later became romantically involved. At the time, Hiner lived in Houston, while Koukhtiev lived in Boston. Koukhtiev subsequently moved to Houston and began living with Hiner.

Hiner, a pianist, and Koukhtiev, a computer programmer, agreed to work together on interactive computer software to teach children and adults how to play the piano. Their efforts resulted in a computer program, a patent, a federally-registered trademark, and some modest revenue from sales of the program. Koukhtiev and Hiner signed a Work for Hire Agreement, which included various terms governing Koukhtiev's work on the software. Hiner, however, did not sign in her individual capacity; she signed the agreement on behalf of "Cottage Music Academy." The evidence at trial conflicted as to the existence and identification of any entity identifiable as Cottage Music Academy.

The attorney who eventually prosecuted the parties' patent application also drafted the Work for Hire Agreement. In the Work for Hire Agreement, Koukhtiev agreed to provide the service of "[programming] of music learning games" and not to compete with Cottage Music Academy in Texas for a period of five years after termination of the contract. He further agreed to "waive[] any interest in the ownership of [his] work product, including but not limited to copyrightable works,

2

ideas, discoveries, inventions, patents, products or other information, developed in whole or in part as a result of this agreement" and that Cottage Music Academy would have "the exclusive ownership" of such work product. In return, he would be paid the sum of $250 a week.

The parties ultimately had a falling out, and Hiner sued Koukhtiev for breach of contract, misappropriation of trade secrets, conversion, partition and equitable partition of the patent, a declaratory judgment regarding various rights of the parties not relevant to this appeal, and assault.

At trial, the court's charge to the jury included the following questions:

**Question 3:**

Did Valeri Koukhtiev agree to assign any or all of his interest in the ownership of his work product including copyrightable works, ideas, discoveries, programming code, software, inventions, trademarks and patents to Hellene V. Hiner?

Answer Yes or No.

Answer: _____

If your answer to Question Number 3 is "Yes," then answer Question 4. Otherwise, do not answer Question 4.

**Question 4:**

Did Valeri Koukhtiev fail to comply with the agreement with Hellene V. Hiner assign [sic] any or all of his interest in the ownership of his work product including copyrightable works, ideas, discoveries, programming code, software, inventions, trademarks and patents?

Answer Yes or No.

Answer: _____

During the charge conference, the following exchange occurred:

> Koukhtiev's Counsel: The defendant . . . objects to Question No. 3 in that it does not contain the required elements of what forms a contract, which are an offer an [sic] acceptance, mutual assent, execution and delivery of the contract with intent that it be mutual and binding, and consideration supporting the contract.

> The Court: Overruled.

> Koukhtiev's Counsel: Defendant objects to Question 4 in that it does not contain the necessary elements for breach of contract in that: One, there's a valid enforceable contract; two, that plaintiff is the proper party to sue for breach of contract; three, that plaintiff performed, tendered performance or was excused from performing contractual obligations; four, the defendant breached the contract; five, the defendant's breach caused the plaintiff injury.

> The Court: Overruled.

Koukhtiev did not tender an alternative version of either question.

The jury returned a verdict in which it found that Koukhtiev agreed to assign his work product to Hiner and breached that agreement, resulting in $18,257.90 in damages to Hiner. The jury further awarded Hiner $46,650 in attorney's fees for preparation and trial, as well as additional fees should Koukhtiev appeal from the trial court's judgment. The trial court entered a judgment on the jury's verdict, awarding the damages and attorney's fees found by the jury, as well as pre-judgment and post-judgment interest and costs of court. The judgment included a declaratory judgment that Hiner has sole ownership of the patent, the trademark,

4

the software, related computer code and websites, and the trade name "Do Re Me Fa Soft."[1]

On appeal, Koukhtiev argues that the trial court erred in submitting Questions 3 and 4 of the jury charge because they omitted necessary elements of the existence and breach of a contract, respectively. Thus, he argues that the verdict does not support the judgment against him.

In response, Hiner argues that Koukhtiev invited error by requesting that the trial court submit its questions in granulated form with separate questions for each element of a breach of contract claim and submit questions of law to the jury. Thus, according to Hiner, Koukhtiev failed to preserve any error.

### Preservation of jury charge error

The Texas Rules of Civil Procedure require a trial court presiding over a jury trial to charge the jury, in writing, before the jury begins its deliberations. TEX. R. CIV. P. 271 ("[T]he trial court shall prepare and in open court deliver a written charge to the jury"), 272 ("The charge shall be in writing . . . ."). "In all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions."

---

[1] The parties disputed whether Hiner or Koukhtiev owned each of these assets; each claimed the assets for herself or himself. Although the parties also formed an entity, Do Re Me Fa Soft, LLC, and disputed ownership of the entity, neither party contends that the entity owns the intellectual property or requested a jury question as to whether it does. Consistent with the jury's verdict, the trial court entered judgment that Koukhtiev and Hiner jointly own the entity, with each owning an undivided one-half interest in it.

TEX. R. CIV. P. 277; *Thota v. Young*, 366 S.W.3d 678, 689 (Tex. 2012) (observing that it has "repeatedly reaffirmed [its] longstanding, fundamental commitment to broad-form submission").

The use of a broad-form jury question for a cause of action does not mean that the question may omit the necessary elements of the claim. *Diamond Offshore Mgmt. Co. v. Guidry*, 171 S.W.3d 840, 844 (Tex. 2005) ("Broad-form submission does not entail omitting elements of proof from the charge."); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 267 (Tex. 1992) (Hecht, J., concurring) ("It should hardly need be said that broad form submission does not entail omitting elements of proof from the charge. Broad form involves inclusion of multiple elements within a single question, usually by adding accompanying instructions, when it is feasible to do so.").

"Whether a granulated or broad-form charge is submitted, the trial court's duty is to submit only those questions, instructions, and definitions raised by the pleadings and the evidence." *Harris Cnty. v. Smith*, 96 S.W.3d 230, 236 (Tex. 2002); *see also* TEX. R. CIV. P. 278 ("Except in trespass to try title, statutory partition proceedings, and other special proceedings [identified by statute or rule], a party shall not be entitled to any submission of any question raised only by a general denial and not raised by affirmative written pleading by that party."); *Thota*, 366 S.W.3d at 693; *Shaw v. Lemon*, 427 S.W.3d 536, 547 (Tex. App.—

Dallas 2014, pet. denied) ("A trial court is required to submit only those claims raised by the pleadings and the evidence."); *Holmes v. Cooley*, 308 S.W.2d 150, 154 (Tex. Civ. App.—Austin 1957, writ ref'd n.r.e.).

Trial courts have "great latitude and considerable discretion" in determining the instructions. *La.-Pac. Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex. 1998); *see also Thota*, 366 S.W.3d at 687. A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without regard to guiding legal principles, or if its decision is not supported by legally or factually sufficient evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998).

A party is obligated to present its objections to the charge "before the charge is read to the jury." TEX. R. CIV. P. 272. The objection must be specific; "[a] party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection." TEX. R. CIV. P. 274; *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 43 (Tex. 2007). Moreover, the party's objection must have "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a). A party must "clearly designate the alleged error and specifically explain the basis of its complaint in its objection to the charge." *Hamid v. Lexus*, 369 S.W.3d 291, 296 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (quoting *Carousel's Creamery,*

7

*L.L.C. v. Marble Slab Creamery, Inc.,* 134 S.W.3d 385, 404–05 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd)).

Failure to object timely to error in a jury charge constitutes a waiver of that error. TEX. R. CIV. P. 272. "Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." TEX. R. CIV. P. 274. A party also waives an objection when it is "obscured or concealed by voluminous unfounded objections, minute differentiations or numerous unnecessary requests." TEX. R. CIV. P. 274; *Dallas Cnty. v. Crestview Corners Car Wash*, 370 S.W.3d 25, 53 (Tex. App.—Dallas 2012, pet. denied). Further,

> [f]ailure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; provided, however, that objection to such failure shall suffice in such respect if the question is one relied upon by the opposing party.

TEX. R. CIV. P. 278. Likewise, "[f]ailure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment." *Id.*

Texas courts "have long favored a common sense application of our procedural rules that serves the purpose of the rules, rather than a technical application that rigidly promotes form over substance." *Thota*, 366 S.W.3d at 690.

8

Therefore, Texas courts have adopted one basic simplified test for determining whether a party has preserved error in the jury charge: the objecting party must make "the trial court aware of the complaint, timely and plainly and obtain[] a ruling.'" *Id.* (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992)). When the basis of the complaint is that a question should be presented in granulated rather than broad form, "the complaining party [must] make a specific objection to the form of the charge to put the trial court on notice of the alleged error and afford the court an opportunity to correct the error." *Thota*, 366 S.W.3d at 690. "On appeal, the charge error complained of must comport with the objections made at the charge conference." *Hamid*, 369 S.W.3d at 296.

Affirmative defenses must be specifically pleaded or tried by consent. Thus, when a party contends that his breach of a contract is excused by another party's prior breach or repudiation of the agreement, these affirmative defenses are waived if they are not pleaded or tried by consent. *Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 852 (Tex. App.—Dallas 2005, pet. denied) ("[T]he contention that a party to a contract is excused from performance because of a prior material breach by the other contracting party is an affirmative defense that must be affirmatively pleaded."); *see also RE/MAX of Tex., Inc. v. Katar Corp.*,

961 S.W.2d 324, 327 (Tex. App.—Houston [1st Dist.] 1997, writ denied) (excuse is an affirmative defense and thus is waived if not pleaded or tried by consent).

**Koukhtiev's objections to Question 3**

Koukhtiev argues, first, that Question 3 was improper because the parties dispute the existence of a contract, so the jury should have been questioned and instructed on the issue. However, the trial court did question and instruct the jury on the issue.

Question 3 asked, "Did Valeri Koukhtiev agree to assign any or all of his interest in the ownership of his work product including copyrightable works, ideas, discoveries, programming code, software, inventions, trademarks and patents to Hellene V. Hiner?" Question 3 was very similar to Texas Pattern Jury Charge 101.1, which "submits the issue of the existence of an agreement" and, in model form, asks,

> Did *Paul Payne* and *Don Davis* agree [*insert all disputed terms*]?
> *[Insert instructions, if appropriate.]*
> Answer "Yes" or "No."
> Answer: _____

Comm. on Pattern Jury Charges, State Bar of Tex., TEX. PATTERN JURY CHARGES, Business Consumer Insurance Employment PJC 101.1 (2012).

At trial, Koukhtiev objected that the question did not contain five elements of an enforceable contract: (1) an offer, (2) an acceptance, (3) mutual assent, (4) "execution and delivery of the contract with intent that it be mutual and

10

binding," and (5) "consideration supporting the contract." The general elements of a contract claim are: "(1) a contract existed between the parties; (2) the contract created duties; (3) the defendant breached a material duty under the contract; and (4) the plaintiff sustained damages." *Cadle Co. v. Castle*, 913 S.W.2d 627, 631 (Tex. App.—Dallas 1995, writ denied); *see also Bayway Servs., Inc. v. Ameri-Build Constr., L.C.*, 106 S.W.3d 156, 160 (Tex. App.—Houston [1st Dist.] 2003, no pet.). When the law requires the parties' agreement to be in writing, the contract must be signed, and a copy must be delivered to each party with the intent that it be mutual and binding. *Winchek v. Am. Express Travel Related Servs. Co., Inc.*, 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also* TEX. BUS. & COM. CODE ANN. § 26.01 (2009).[2]

The first three parts of Koukhtiev's objection addressed the first element: the existence of a contract between the parties. The fourth part of Koukhtiev's objection was directed at the legal requirements that, when the law requires the parties' agreement to be in writing, the contract must be signed, and a copy must be delivered to each party. We specifically note, however, that Koukhtiev did not

---

[2] If a written contract is not required by law to be in writing, the parties may orally agree to the terms of a written contract without signing it. *Simmons & Simmons Constr. Co., Inc.*, 286 S.W.2d 415, 417–18 (Tex. 1955); *Flores v. Schwartz*, 259 S.W. 266, 267 (Tex. 1924); *see also Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 149–50 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Tabrizi v. Daz-Rez Corp.*, 153 S.W.3d 63, 67 (Tex. App.—San Antonio 2004, no pet.). In those circumstances, execution and delivery are not required.

argue that the parties did not sign an agreement or that he failed to receive delivery of the contract. That is, while he contends that the charge did not include all elements of a contract claim, he did not argue at trial or on appeal that the evidence raised a question as to signature or delivery of a written contract. Accordingly, the trial court was not required to submit a question on signature or delivery. TEX. R. CIV. P. 278; *Smith*, 96 S.W.3d at 236; *see also Thota*, 366 S.W.3d at 693; *Shaw*, 427 S.W.3d at 547; *Holmes*, 308 S.W.2d at 154.

On appeal, Koukhtiev first argues that Question 3 did not ask if there was an offer and acceptance and a meeting of the minds. He preserved this objection. But Question 3 adequately addresses all three of these elements by asking whether the parties agreed to certain terms. Koukhtiev concedes as much; he states that it is undisputed that he (and Hiner) signed the Work for Hire Agreement, but he argues instead that the true issue was whether that agreement "reflected the true intention of the parties." Question 3 adequately addresses that issue by describing the substance of the agreement and asking whether the parties agreed to those terms. Further, the question as submitted was supported by evidence of an offer (an exchange of money for programming), acceptance (Koukhtiev's performance of the work), and mutual assent (the parties' execution of the Work for Hire Agreement and performance of its terms).

Moreover, while the trial court could have given instructions on offer, acceptance, and mutual assent, it was not necessary for it to do so. *Smith*, 96 S.W.3d at 236; *see also* TEX. R. CIV. P. 278; *Thota*, 366 S.W.3d at 693; *Shaw*, 427 S.W.3d at 547; *Holmes*, 308 S.W.2d at 154. Trial courts have "great latitude and considerable discretion" in determining the instructions. *La.-Pac. Corp.*, 976 S.W.2d at 676; *see also Thota*, 366 S.W.3d at 687. They abuse their discretion only if they act arbitrarily, unreasonably, or without regard to guiding legal principles, or if their decisions are not supported by legally or factually sufficient evidence. *Bocquet*, 972 S.W.2d at 21. Under the facts of this case, we could not hold that the trial court abused its discretion in submitting a question that expressly asked whether Koukhtiev agreed to specific terms involving transfer of his work product to Hiner, the very issue that Koukhtiev concedes was disputed, while omitting questions as to matters not in dispute, such as whether the contract was signed or delivered. *See Smith*, 96 S.W.3d at 236; *see also Thota*, 366 S.W.3d at 693; *Shaw*, 427 S.W.3d at 547; *Holmes*, 308 S.W.2d at 154. Because Question 3 presented the issue in dispute, the trial court did not err in submitting it over Koukhtiev's objection.

### Koukhtiev's objections to Question 4

With respect to Question 4, Koukhtiev argues that the question failed to require proof of each element of a cause of action for breach of contract, namely

that (1) there was a valid, enforceable contract; (2) the plaintiff was a proper party to sue for breach of contract; (3) the plaintiff performed, tendered performance, or was excused from performing its contractual obligations; (4) the defendant breached the contract; and (5) the defendant's breach caused the plaintiff injury. *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App.—El Paso 2009, no pet.) (elements 1, 3–5); *Mandell v. Hamman Oil & Ref. Co.*, 822 S.W.2d 153, 161 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (element 2), *abrogated on other grounds by Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 18 (Tex. 2008); *see also Merrimack Mut. Fire Ins. Co. v. Allied Fairbanks Bank*, 678 S.W.2d 574, 576–77 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (analyzing second element as threshold standing requirement, rather than as element of breach of contract claim). According to Koukhtiev, Question 4 failed to require findings on elements 2, 3, and 4, each of which was disputed at trial.

We note that Question 4 matches exactly the Pattern Jury Charge for the breach of a contract, which reads,

> Did *Don Davis* fail to comply with *the agreement*?
> *[Insert instructions, if appropriate.]*
> Answer "Yes" or "No."
> Answer: _____

Comm. on Pattern Jury Charges, State Bar of Tex., Tex. PATTERN JURY CHARGES, Business Consumer Insurance Employment PJC 101.2 (2012). Other than the necessary substitutions of "Valeri Koukhtiev" for "Don Davis" and a description of

14

"the agreement with Hellene V. Hiner" for the words "the agreement," Question 4 is identical to the pattern.[3]

Koukhtiev first argues that Question 4 fails to address the disputed question of fact whether Cottage Music Academy was a sole proprietorship wholly owned by Hiner or the unofficial name of an equal partnership between Hiner and Koukhtiev. Thus, he contends, Question 4 failed to require a finding that Hiner was the proper party to sue for any breach of contract by Koukhtiev, and it should have asked whether Hiner could sue for breach of an agreement between Koukhtiev and Cottage Music Academy. But Question 4 asks about "the agreement *with Hellene V. Hiner*" to assign certain rights to her. The jury could not logically answer "yes" to Question 3 and also to this Question if it did not find that an "agreement with Hellene V. Hiner" existed.

Koukhtiev next complains that Question 4 did not require a finding that Hiner performed, tendered performance of, or was excused from performing her contractual obligations. These issues go to whether Koukhtiev's breach of contract was excused by Hiner's own breach or repudiation of the contract, a defense that Koukhtiev waived if he did not affirmatively plead it or try it by consent. *Compass Bank*, 152 S.W.3d at 851; *see also* TEX. R. CIV. P. 272, 274; *RE/MAX of Tex., Inc.*,

---

[3] Question 4 asked, "Did Valeri Koukhtiev fail to comply with the agreement with Hellene V. Hiner [to] assign any or all of his interest in the ownership of his work product including copyrightable works, ideas, discoveries, programming code, software, inventions, trademarks and patents?"

961 S.W.2d at 327. The record before us does not reflect any pleading asserting this defense or agreement to try the issue by consent, and Koukhtiev did not submit these issues for determination by the jury. Accordingly, we hold that Koukhtiev waived any objection to Question 4 on the grounds that it failed to require a finding that Hiner complied with the agreement.

Koukhtiev further asserts that Question 4 does not require a determination whether Koukhtiev breached the contract because it did not specifically ask if he breached the "Work for Hire Agreement." Had it done so, Koukhtiev concedes that it would be a proper question. Koukhtiev argues that this omission is exacerbated by Question 4's use of the language "any or all of his interest," which he argues is self-contradictory and ambiguous because "any" and "all" are different concepts. Koukhtiev's counsel did not mention the Work for Hire Agreement or submit any specific language in Question 4 in his objection to the trial court, nor did he object on grounds that the question was self-contradictory or ambiguous. Nothing about the evidence or the context of the question would have made these objections clear to the trial court. Thus, Koukhtiev failed to preserve any error with respect to these arguments. TEX. R. CIV. P. 272, 274.

**Conclusion**

We affirm the trial court's judgment.

Harvey Brown
Justice

Panel consists of Justices Keyes, Bland, and Brown.

17