ACCEPTED
13ccv050162
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/20/2015 2:16:49 PM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00893-CV

IN THE FIRST COURT OF APPEALS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

1/20/2015 2:16:49 PM

CHRISTOPHER A. PRINE
Clerk

1221 ELDRIDGE ROAD, INC.,
APPELLANT

VS.

LIFE CHANGING MINISTRIES AND FELLOWSHIP, INC., ERIC STEPHENS, AND
JENNIFER STEPHENS,
APPELLEES

APPELLANT'S BRIEF

Respectfully submitted,

LAW OFFICES OF STEVEN TUAN PHAM

2500 Wilcrest Drive, Suite 300
Houston, Texas 77042
Phone:   (713) 517-6645
Fax: (888) 824-8539
Email: stevenphamesq@yahoo.com

By: */S/ Steven Tuan Pham*
Steven Tuan Pham
Texas State Bar #24052899
Vy-Vivian Nguyen
Texas State Bar #24073383
Attorneys for Appellant,
1221 Eldridge Road, Inc.

i

**IDENTITY OF PARTIES AND COUNSELS**

APPELLANT:        1221 ELDRIDGE ROAD, INC

COUNSEL FOR
APPELLANT:        Steven Tuan Pham
Law Offices of Steven Tuan Pham
2500 Wilcrest Drive, Suite 300
Houston, Texas 77042
Phone:  (713) 517-6645
Fax:    (888) 824-8539
Email: stevenphamesq@yahoo.com
Trial and Appellate Attorney

Vy-Vivian Nguyen
15721 Park Row Drive #100
Houston, TX 77084
Phone: (713) 714-0100
FAX: (713) 714-0101
Email: vivian@vnguyenlaw.com
Trial and Appellate Attorney

APPELLEES:        LIFE CHANGING MINISTRIES AND FELLOWSHIP, INC., ERIC STEPHENS AND JENNIFER STEPHENS

COUNSEL FOR
APPELLEES:        Ted A. Cox
Ted A Cox, P.C
1225 W. 34th
Houston, TX 77018
Phone:  713-956-9400
Fax: (713) 956-8485
Email: ted@tedacox.com
Appellate Attorney

Jennifer Fleck
Ted A Cox, P.C
1225 W. 34th
Houston, TX 77018
Phone:  713-956-9400
Fax: (713) 956-8485
Email: jennifer@tedacox.com
Trial and Appellate Attorney

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL …………………………………….……….….………ii

INDEX OF AUTHORITIES ........................................................................................v-vi

STATEMENT OF THE CASE ....................................................................................vii

ISSUES PRESENTED ..............................................................................................xiii

(1) The trial court erred in denying Appellant's Motion for Directed Verdict when the facts and evidence were conclusive as a matter of law that all jury questions regarding Appellant's breach of contract, breach of the covenant of quiet enjoyment and constructive eviction should have been omitted from the questions presented to the jury.

(2) The trial court abused its discretion by failing to disregard the jury's answers because Appellees produced no more than a scintilla of evidence proving that Appellant breached the 1255 Eldridge and the 1243 Eldridge lease agreements.

(3) The trial court abused its discretion by failing to disregard the jury's answers regarding Appellant's breach of the implied covenant of quiet enjoyment and Appellant's constructive eviction because the evidence was conclusive that, as a matter of law, Appellees did not have the right to an implied covenant of quiet enjoyment and Appellant did not constructively evict Appellee from the leased premises.

(4) The trial court abused its discretion by failing to disregard the jury's answers because the evidence was conclusive as a matter of law that even if both parties breached, Appellees breached first by virtue of their monetary and non-monetary defaults; and, therefore, Appellant is entitled to damages and attorney's fees as the result of Appellees' breach.

(5) The trial court erred by denying Appellant's Motion for Directed Verdict when the facts and evidence were conclusive as a matter of law that Appellant did not breach the Leases; and, therefore, as a matter of law the jury's questions regarding Appellant's breach of contract, and breach of covenant of quiet enjoyment and constructive eviction should have been omitted.

STATEMENT OF FACTS .......................................................................................ix-xii

SUMMARY OF THE ARGUMENT .......................................................................xiii

ARGUMENTS.......................................................................................................1-26

STANDARD OF REVIEW...…………………….………………..…………………………1

Issue 1:  The trial court erred and abused its discretion by denying Appellant's Motion To Disregard Jury's Questions because there is no evidence that supports the jury's answers to questions 2 and 5 answering in the affirmative that Appellant breached the lease agreements…………………………………………………………………………..2-8

Issue 2:  The trial court erred and abused its discretion by denying Appellant's Motion To Disregard Jury's Questions because the evidence was conclusive, as a matter of law, that even if the jury finds both parties breached, Appellee have breached first; and thus, the evidence does not support the jury's answers to questions 3 and 6……………………………………………………………….……………8-13

Issue 3:  The trial court abused its discretion by failing to disregard the jury's answers regarding Appellant's breach of the implied covenant of quiet enjoyment and Appellant's constructive eviction because the evidence was conclusive as a matter of law that, Appellees did not have the right to an implied covenant of quiet enjoyment and Appellant did not constructively evict Appellee……………………..…………………………………13-20

Issue 4:  The trial court erred and abused its discretion by failing to grant Appellant's Motion To Disregard Jury's Questions because the evidence was conclusive as a matter of law that Appellees breached the two lease agreements; and thus, Appellant is entitled to damages and attorney's fees. Therefore, the evidence does not support the jury's answers to questions 7, 8, and 11………………………………………………………………20-21

Issue 5: The trial court erred by denying Appellant's Motion for Directed Verdict when the facts and evidence were conclusive as a matter of law that Appellant did not breach the contracts; and, therefore, as a matter of law, jury's question regarding Appellant's breach of contract, and breach of covenant of quiet enjoyment and constructive eviction should have been omitted…..……………………………………………………….…………21-26

PRAYER ........................................................................................................................27

CERTIFICATE OF COMPLIANCE ............................................................................28

CERTIFICATE OF SERVICE…………...................................................................29

APPENDIX....................................................................................................................30

# INDEX OF AUTHORITIES

CASES

*Anderson v. City of Seven Points,* 806 S.W.2d 791, 795 n. 3 (Tex.1991)……………..………2, 13

*Briargrove Shopping Center Joint Venture, Inc. v. Vilar, Inc.,* 647 S.W.2d 329, 334 (Tex.App. Houston [1ˢᵗ Dist.] 1982, no writ)…………………………………………………………….14

*Brown v. Bank of Galveston,* 963 S.W.2d 511, 513 (Tex.1998)……………….……………..……2

*Cayton v. Moore*, 224 S.W.3d 440, 445 (Tex.App.-Dallas 2007, no pet.)………………..….…1

*Charles Robert Villarreal v. State of Texas,* 935 S.W.2d 134, 145 (Tex. Crim. App., 1996)…….1

*Dallas Power & Light Company v. Cleghorn,* 623 S.W.2d 310, 311 (Tex.1981)…………..…14

*Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987)…………………………………..8, 13

*Fidelity Mut. Life Ins. Co. v. Robert P. Kaminsky, M.D., P.A.*, 768 S.W.2d 818, 819 (Tex. App.—Houston [14th Dist.] 1989, no writ)……………………………………..………17

*Gallas v. Car Biz, Inc.,* 914 S.W.2d 592, 593 (Tex.App-Dallas 1995, writ denied)………......8, 13

*Gerdes v. Mustang Exploration Co.,* 666 S.W.2d 640, 642 (Tex.App.--Corpus Christi 1984, no writ)………………………………………..……………………………………….8, 13

*Gonzales v. Willis,* 995 S.W.2d 729, 740 (Tex.App-San Antonio 1999, no pet)………………22

*Haynes & Boone, LLP. V. Chason,* 81 S.W.3d 307, 309 (Tex.App-Tyler 2001, pet. denied)…...1

*HTM Restaurants, Inc. v. Goldman, Sachs & Co.,* 797 S.W.2d 326, 328 (Tex. App.-Houston [14th Dist.] 1990, writ denied)…………………………………………………………14

*Jelinek v. Casas,* 328 S.W.3d 526, 539 (Tex. 2010)………………………………………....1

*John Masek Corp. v. Davis,* 848 S.W.2d 170, 173 (Tex.App.--Houston [1st Dist.] 1992, writ denied)…………………………………………………………………………..8

*Lazell v. Stone*, 123 S.W.3d 6, 11–12 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)……………………………………………….……………..……14, 17, 18

*L-M-S Inc. v. Blackwell,* 233 S.W.2d 286, 289 (Tex.1950)……………………………...14

*Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990)……………………………...8, 13

*Navarette v. Temple Indep. School Dist.,* 706 S.W.2d 308, 309 (Tex.1986)…………………8, 13

*Nguyen Ngoc Giao v. Smith & Lamm, P.C.,* 714 S.W.2d 144, 146 (Tex. App. – Houston [1st Dist.] 1986, no writ…………………………………………….…………………13

*Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995)…………...……..16, 17, 19

*Porterfield v. Brinegar,* 719 S.W.2d 558, 559 (Tex. 1986)………………………..…..…..22, 24

*Reyna v. First National Bank,* 55 S.W.3d 58, 69 (Tex.App-Corpus Christi 2001, no pet.)…......22

*Tabrizi v. Daz-Rez Corp.,* 153 S.W.3d 63, 66 (Tex.App-2004, no pet.)…………………....2, 8

*Tiller v. McLure,* 121 S.W.3d 709,713 (Tex.2003)…………………………………………….2

*Vance v. My Apt. Steak House,* 677 S.W.2d 480, 483 (Tex.1984)………………………………22

*Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex.2003)…………………………………………...1

*Wal-Mart Stores v. Miller,* 102 S.W.3d 706, 709 (Tex.2003)…………………….……………2

*Weidner v. Sanchez,* 14. S.W.3d 353, 366 (Tex.App-Houston[14th Dist.] 2000, no pet)….......1, 22

*Westchester Fire Insurnace Co. v. Admiral insurance Co.,* 152 S.W.3d 172, 191 (Tex.App-Fort Worth 2004, pet. filed 2-3-05)…………………………………………………...…………22

*White v. Liberty Eylau ISD,* 920 S.W.2d 809, 813 (Tex.App-Texarkana 1996, writ denied)....1, 22

*White v. Southwestern Bell Telephone Co., Inc.,* 651 S.W.2d 260, 261 (Tex., 1983)…………...22


CODES AND STATUTES

Texas Civil Practice & Remedies Codes § 38.001…………………………..………….…..20

Texas Property Code §93.0002(f)……………………………………..………………..19

Texas Rule of Civil Procedure 301……………..………………………………………...20

**STATEMENT OF THE CASE**

This case involves landlord-tenant contract disputes based on two separate leases on two adjacent demised premises. Appellant, 1221 Eldridge Road Inc., filed suit against Appellees, Life Changing Ministries, Inc., Eric Stephens and Jennifer Stephens, for breach of two separate lease agreements. Appellee counter sued for breach of contract, breach of the covenant of quiet enjoyment and for constructive eviction. The case was tried to a jury that rendered a verdict in favor of Appellees. During trial, after the parties rested, Appellant moved for directed verdict on Appellees' counter claims of breach of the warranty of quiet enjoyment and of constructive eviction. The trial court denied Appellant's Motion for Directed Verdict. The jury found that both parties breached the lease agreements, but that Appellant breached first and that Appellant also breached the warranty of quiet enjoyment and constructively evicted Appellees; and thus, awarded Appellee $15,000 in attorney's fees. Appellant moved the trial court to disregard some of the Jury's answers. The trial court denied Appellant's motion and entered judgment of $15,000 in favor of Appellees for attorney's fees. Appellant timely filed its Notice of Appeal.

# ISSUES PRESENTED

1. The trial court erred in denying Appellant's Motion for Directed Verdict when the facts and evidence were conclusive as a matter of law that all jury questions regarding Appellant's breach of contract, breach of the covenant of quiet enjoyment and constructive eviction should have been omitted from the questions presented to the jury.

2. The trial court abused its discretion by failing to disregard the jury's answers because Appellees produced no more than a scintilla of evidence proving that Appellant breached the 1255 Eldridge and the 1243 Eldridge lease agreements.

3. The trial court abused its discretion by failing to disregard the jury's answers regarding Appellant's breach of the implied covenant of quiet enjoyment and Appellant's constructive eviction because the evidence was conclusive as a matter of law that, Appellees did not have the right to an implied covenant of quiet enjoyment and Appellant did not constructively evict Appellee.

4. The trial court erred and abused its discretion by failing to grant Appellant's Motion To Disregard Jury's Questions because the evidence was conclusive as a matter of law that Appellees breached the two lease agreements; and thus, Appellant is entitled to damages and attorney's fees. Therefore, the evidence does not support the jury's answers to questions 7, 8, and 11.

5. The trial court erred by denying Appellant's Motion for Directed Verdict when the facts and evidence were conclusive as a matter of law that Appellant did not breach the contracts; and, therefore, as a matter of law, jury's question regarding Appellant's breach of contract, and breach of covenant of quiet enjoyment and constructive eviction should have been omitted.

**STATEMENT OF FACTS**

**A. Background Facts**

This case centers on two lease agreements with Appellant, 1221 Eldridge Road Inc. as landlord and Appellees, Life Changing Ministries And Fellowship, Inc., Eric Stephens and Jennifer Stephens as tenants. On February 29, 2008, Appellees entered into a written lease agreement with Appellant for the demises premises located at 1255 Eldridge Road in Sugar Land, Texas (the "1255 Lease"). Per the 1255 Lease, Appellees were to pay Appellant monthly rent in the amount of $1,216.00 beginning on March 1, 2008 for a period of 36 months. The 1255 Lease also provided that Appellees were to pay $252.00 per month for the prorated share of taxes, insurance and common area maintenance as well as $100.00 per month for utilities (water) and $45.00 per month for sign fees and late fees on past due payments as applicable.

On May 14, 2009, Appellees entered into another written lease agreement with Appellant for the property known as 1243 Eldridge Road in Sugar Land, Texas (the "1243 Lease"). The 1243 Lease provided that Appellees were to pay Appellant monthly rent in the amount of $760.00 beginning on May 16, 2009 for a period of 36 months. The 1243 Lease also stated that Appellees were to pay $193.50 per month for the prorated share of taxes, insurance and common area maintenance as well as $ 40.00 per month for utilities (water) and late fees on past due payments as applicable.

Evidence presented in the trial court supports Appellant's claims that Appellees breached the 1255 Lease by failing to pay rent timely and in full as well as the applicable late fees. Appellees failed to provide proper insurance coverage, failed to perform a walk-through in accordance with the turn-over procedure specified in the 1255 Lease and left the leased premises with damages. Trial evidence also showed that Appellant incurred expenses related to filling in

the doorways that Appellees cut in the demising wall between the two leased spaces, replacing all of the lighted exit signs, emergency eights, large full length wall mirrors, which were removed by Appellees, and repairing sheet rock damage due to Appellees' use of the property.

Trial evidence further showed that Appellees breached both the 1243 and the 1255 Leases as soon as they took possession of that space by failing to obtain Appellant's written approval prior to make modifications therein. There was also evidence at trial of Appellees' breach of the 1243 Lease by failing to pay rent in the form of the late fees. It is undisputed that Appellees breached the 1243 Lease by vacating that space 14 months early and refusing to pay rent as well as the other fees for the remainder of the lease term. Specifically, Appellees failed to pay rent in full beginning in March, 2011 and continuing until the end of the lease term, May 15, 2012. undisputed evidence at trial included the fact that Appellees failed to provide proper insurance coverage, failed to perform a walk-thru in accordance with the turn-over procedure specified in Appellees' 1243 Lease (Appellee mailed the key to the lease premises) and Appellees left the lease premises in an un-leasable condition due to the damages caused by Appellees. Appellant provided further evidence at trial that it incurred expenses related to filling in the doorways where Appellee had cut in the demising wall between the two leased spaces. Additional evidence at trial showed Appellant had to replace all of the lighted exit signs, emergency lights, which were removed by Appellees and repair sheet rock damage in the 1243 leased space due to Appellees' use of the property.[1]

Appellant filed suit, Appellees answered and countersued. The case was tried to a jury and the jury found both parties breached the leases, the Appellant was the first to breach, the

---

[1] Vol. 3 R.R., pg. 32 lines 17-21; Vol. 3 R.R., pg. 51 lines 9-22; *See* Appellant's Trial Exhibit 2.

Appellant breached the warranty of quiet enjoyment and constructively evicted the Appellees.[2]

**B.      Appellant's Motion for Instructed Verdict**

At trial, after both parties rested and outside the presence of the jury, Appellant moved for instructed verdict pursuant to the T.R.C.P § 268, on Appellees' breach of contract, breach of warranty of quiet enjoyment and constructive eviction claims. After hearing Appellant's oral motion, the trial court asked Appellees a number of questions and suggested that there was no evidence to support Appellees' breach of contract claim. However, the allowed jury questions regarding Appellees' claims. Appellant contends that since there was insufficient evidence presented at trial to support the presentment of those questions to the jury, the trial court erred.

**C.      Appellant's Motion to Disregard Jury's Answers**

Appellee filed their Motion for Final Judgment. Appellant then filed its Motion to Disregard Jury's Answers. As part of Appellant's Motion to Disregard Jury's Answers, it argued, among other things, that:

1.  Appellees produced no more than a scintilla of evidence proving that Appellant breached the 1255 Eldridge Lease and the 1243 Eldridge Lease;

2.  The evidence was conclusive that Appellees did not have the right to an implied covenant of quiet enjoyment and Appellant did not constructively evict Appellees from the leased premises; and

3.  The evidence was conclusive that even if both parties breached, Appellees breached first and Appellant is entitled to damages and attorney's fees as the result of Appellees' breach.

The trial court denied Appellant's Motion to Disregard Jury's Answers and granted final

---

[2] R.R. Vol. 5, pg. 32, line 11 through pg. 33, line 21.

judgment in favor of Appellee and entered a Final Judgment in favor of Appellees. Appellant timely filed its Notice of Appeal.

# SUMMARY OF ARGUMENTS

Appellant would respectfully show that:

A. The trial court erred and abused its discretion by denying Appellant's Motion to Disregard Jury's Questions because there is no evidence in support of the jury's answers to questions 2 and 5.

B. The trial court erred and abused its discretion by denying Appellant's Motion To Disregard Jury's Questions because the evidence was conclusive that, as a matter of law, even if the jury found both parties breached the leases, Appellees breached first; and, therefore, the evidence does not support the jury's answers to questions 3 and 6.

C. The trial court erred and abused its discretion by denying Appellant's Motion To Disregard Jury's Questions because the evidence was conclusive that, as a matter of law, Appellees had no warranty of quiet enjoyment of the leased spaces and Appellant did not constructively evict Appellees from the lease premises. And as such, the evidence does not support the jury's answer to question 9.

D. The trial court erred and abused its discretion by denying Appellant's Motion To Disregard Jury's Questions because the evidence was conclusive that, as a matter of law, as a result of Appellees' breach of the two lease agreements, Appellant is entitled to damages and attorney's fees; and, therefore, the evidence does not support the jury's answers to questions 7, 8, and 11.

E. The trial court erred by denying Appellant's Motion for Directed Verdict since there was insufficient evidence to support the jury questions regarding Appellant's breach of contract, breach of covenant of quiet enjoyment and constructive eviction claims.

## ARGUMENTS

### A. Standard of Review

An appeal from the denial of motion for directed verdict is a challenge of legal sufficiency.[1] The denial of a motion for directed verdict lays the foundation for challenging the evidence on appeal by issues or points of error contending there was no evidence of certain fact or that a fact was established as a matter of law.[2] Questions of law are reviewed de novo by the appellate tribunal.[3] Because this appeal is based on the trial court's denial of Appellant's Motion for Instructed Verdict, contending that there was no evidence in support Appellees' causes of action for breach of contract, breach of warranty of quiet enjoyment and constructive eviction, the standard of review is *de novo*.

Issues related to the trial court's denial of Appellant's Motion to Disregard Jury Answers should be reviewed under both, *de novo* and the abuse of discretion standards. The test for abuse of discretion requires the appellate court to determine whether the trial court acted in an arbitrary or unreasonable manner without reference to any guiding rules or principles.[4] A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles.[5] An abuse of discretion occurs if the trial court clearly failed to analyze and determine the law correctly or applied the law incorrectly to the facts.[6] Because Appellant is challenging the trial court's misapplication of law and fact in denying its Motion to Disregard Jury's Answer, issues related to same should be reviewed under the abuse of discretion standard.

---

[1] *Haynes & Boone, LLP. v. Chason,* 81 S.W.3d 307, 309 (Tex.App-Tyler 2001, pet. denied).
[2] *Weidner v. Sanchez,* 14 S.W.3d 353, 366 (Tex.App-Houston[14th Dist.] 2000, no pet); and *White v. Liberty Eylau ISD,* 920 S.W.2d 809, 813 (Tex.App-Texarkana 1996, writ denied).
[3] *Charles Robert Villarreal v. State of Texas,* 935 S.W.2d 134, 145 (Tex. Crim. App., 1996).
[4] *Jelinek v. Casas,* 328 S.W.3d 526, 539 (Tex. 2010).
[5] *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex.2003).
[6] *Cayton v. Moore,* 224 S.W.3d 440, 445 (Tex.App.-Dallas 2007, no pet.).

**A. The trial court erred and abused its discretion by failing to disregard the jury's answers number 2 and 5 because Appellees did not produced more than a scintilla of evidence that Appellant breached the 1255 Eldridge Lease and the 1243 Eldridge Lease.**

A trial judge may grant a motion for judgment notwithstanding the verdict when there is no evidence to support one or more of the jury's findings of fact necessary to the judgment. The Court should grant a motion for JNOV if there is no evidence to support the jury findings.[7] When the evidence is no more than a scintilla, it is no evidence.[8] In determining whether to grant a motion for JNOV, the Court may look at these factors: (1) the complete absence of evidence of a necessary fact; (2) the evidence offered to prove the necessary fact is no more than a mere scintilla of evidence; (3) the evidence conclusively establishes the opposite of the necessary fact; or (4) the rules of law or evidence bar consideration of the only evidence offered to prove the necessary fact.[9]

In this case, Appellees failed to offer the necessary evidence to show that Appellant's actions and/or omissions constituted a breach of the Leases, which would have supported the jury's answers to questions 2 and 5.

### i. There is no evidence that Appellant breached the Leases by charging estimated water use fees

Appellees alleged in their pleading and at trial that Appellant breached the leases by making estimated demands for water usage.[10] Appellees further claimed that Appellant initiated the conflict by making unfair demands of alleged unauthorized fees.

However, the evidence and witness testimony at trial were contrary to Appellees'

---

[7] *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990). *See Tiller v. McLure,* 121 S.W.3d 709,713 (Tex.2003); *Wal-Mart Stores v. Miller,* 102 S.W.3d 706, 709 (Tex.2003); *Brown v. Bank of Galveston,* 963 S.W.2d 511, 513 (Tex.1998).

[8] *Tabrizi v. Daz-Rez Corp.,* 153 S.W.3d 63, 66 (Tex.App-2004, no pet.); *Rush v Barrios,* 56 S.W.3d 88, 94-95 (Tex.App-Houston [14th Dist.] 2001, pet. denied).

[9] *Anderson v. City of Seven Points,* 806 S.W.2d 791, 795 n. 3 (Tex.1991).

[10] R.R. Vol. 4 pg. 33 lines 1-15 and pg. 74, line 5 to pg. 75 line 25.

claims.[11]   Article VIII of the Lease Agreements authorized Appellant to charge Appellees an initial estimate of the water bill, and at a later time, adjust the estimate to more accurately reflect Appellees' usage.[12] Further, under section 20 of Exhibit A of the Lease Agreement, Appellees agreed that they will be charged water and sewage based on the city rates from Appellees' sub-meters, "and/or [Appellant's] estimated monthly water usage by [Appellees] at [Appellant's] sole discretion."[13] Appellant testified that on at least one occasion when it suspected there was a water leakage, it was not able to access the leased premises to inspect and was not able to contact Appellees.[14]   Furthermore, Appellant's representative, Mr. Scott Pierce, testified that on numerous occasions he was not able to enter the leased premises to check the water sub-meters and was unwelcome at other times when he was able access to the properties.[15]  Therefore, under the terms of the leases and at its option, Appellant charged a reasonable amount for Appellees' estimated water usage and would later credit Appellees in the event they over-paid.[16]  Appellees' offered evidence that Appellant breached the Leases by making unauthorized demands for estimated water usage demands is unsubstantiated.  In fact, just the opposite was provided for in the Leases - that Appellant is authorized to estimate Appellees' monthly water usage, at its own discretion.[17]

      **ii.**    **Appellees claim that Appellant breached the Leases by charging for signage fees**

Appellees claimed that Appellant was not authorized to charge for signage fees.[18] Article VII of the Lease Agreements states that, "Tenants will install at Tenant's own expenses a sign

---

[11] R.R. Vol. 3. pg. 44 line 4 to pg 47 line 9.
[12] R.R. Vol. 6 Appellant's Trial Exhibits "3" and "4" the Leases
[13] *Id.*  R.R. Vol. 4 pg. 79, lines 3-9 and pg. 87, line 4 to pg. 89 line 25.
[14] R.R. Vol. 3 pg. 64, line 1 to pg. 65 line 8.
[15] R.R. Vol. 3 pg. 102, line 22 to pg. 103, line 4, pg. 130, lines 6-24.
[16] R.R. Vol. 3, pg. 167, lines 6-22.
[17] R.R. Vol. 6 Appellant's Trial Exhibits "3" and "4" the Leases.
[18] R.R. Vol. 4, pg. 180 line 23 to pg. 182, line 3.

3

which meets the Landlord's existing established criteria and which Landlord *may charge, at his sole discretion,* as he deems appropriate to advertise the Center." Emphasis added.[19] Furthermore, under section 21 of the Exhibit A of the Lease Agreements, Appellees agreed to pay Appellant a signage fee of $40, which later changed to $45 when Appellees acquired the additional space located at 1243 Eldridge.[20]  Therefore, the Leases clearly give Appellant the discretionary right to make demands for signage fees. By virtue of Appellees' assent to the terms of the Leases, they agreed to pay for any such signage fees. By not paying the signage fees as agreed, Appellees breached the Leases before Appellant could have breached.

At trial, Appellees argued that under section 3 of Exhibit A of the Leases and because the parties never entered into a written agreement separate from the Leases, signage fees were not payable to Appellant by virtue of the following language: "If Tenant wishes to use any pylon sign or sign frame supplied by Landlord, Tenant will sign an agreement separate from this lease."[21] However, the requirement of a signage agreement apart from the Leases is not a condition precedent necessary for Landlord to charge Appellees a signage fee.  In other words, Appellant, as the Landlord, has the right to make Appellees to sign another agreement prior to the use of the pylon structure, but Appellant is not obligated to sign a new contract to enforce the signage fees, especially when Appellees already installed the signs and use the pylon structure.

Evidence of Appellees' further breach of the Leases included trial testimony by both parties that Appellees installed sign without Appellant's written preapproval and knowledge.[22] Both parties testified that the Leases specifically stated that if a pylon sign was going to be

[19] R.R. Vol. 6, Appellant's Trial Exhibits "3" and "4" the Leases.
[20] *Id.*
[21] *Id.*
[22] R.R. Vol. 3, pg. 124, lines 4-19, pg. 189, lines 1-11, (CANT FIND WHERE STEPHENS TESTIFIED TO THIS)

4

installed, a sketch must be provided to Appellant prior to it installation.[23] By using the pylon sign, failing to produce a sketch of the sign to Appellant prior to its installation, and by refusing to pay for signage fees authorized under the Leases, Appellees breached the Leases first.

### iii.    Appellees first breached the Leases by paying late

Evidence at trial showed that Appellees breached the leases prior to Appellant making payment demands. Appellees continuously paid rent late and failed to pay for at least two rent increases.[24] The Leases authorized Appellant to charge a late fee of 10% for late payments and 18% for unpaid rent. Section 2.2 under Article II of the lease stipulates that all rents are due and payable on or before the first day of each and every calendar month; provided that if the lease commences on a date different from the first of each month, rent will be due and payable on that date.[25] Appellees argued, however, that rent is considered due and payable when it is mailed out.[26] Appellees' argument is contrary to the contract, and even more importantly, contrary to the evidence. The phrase "due and payable," is defined under Section 10 of Exhibit A of the Leases. Said section states that all rent "must be received by Landlord on or before the first of each calendar month."[27] This section is applicable to the first of every month with respect to the 1255 Eldridge Lease and on the 15th of every month with respect to the 1243 Eldridge Lease.[28]

To enforce prompt payment of rent under Article 22.8 of the Leases, Appellant is authorized to charge Appellees a flat rate of 10% of all late payments. This is not to be construed as an interest rate; but rather, it is a penalty for late payments.[29] As an additional tool to enforce the contract, Section 9 of Exhibit A of the Lease Agreement authorized Appellant to

---

[23] R.R. Vol. 3, pg. 124 lines 4-19.
[24] R.R. Vol. 3, pg. 164, line 23 to pg. 165, line 3.
[25] *Id.;* R.R. Vol. 3 pg. 38, lines 5-23.
[26] R.R. Vol. 4 pg. 118 to pg. 123 line 21.
[27] R.R. Vol. 6, Appellant's Trial Exhibits "3" and "4", the Leases.
[28] R.R. Vol. 6 pg. 28 lines 59-62; and R.R. Vol. 6 pg. 47 lines 59-62
[29] R.R. Vol. 6, Appellant's Trial Exhibits "3" and "4", the Leases.

charge Appellees 18% interest for all unpaid rent from the date due until paid.[30] Therefore, the Leases specifically authorized Appellant to make charges specific to late fees and interest and acceptance of any such late payment and late fees, "shall not constitute a waiver of tenant's default with respect to the overdue amount, nor prevent Landlord from exercising any of the other rights and remedies available to Landlord."[31]

As incentive for Appellees to enter into the Leases, Appellant reduced rate on both of the Lease.[32] However, Appellees were to reimburse Appellant the reduced rent amount if they were to default on the Leases.[33] Section 16 of Exhibit A under the Lease Agreements stipulates the amount of reduced rents and the conditions of such fees.[34] With respect to the 1255 Eldridge Lease, Appellant gave Appellees a discount in the amount of $187.00 per month for twelve months.[35] As to the 1243 Eldridge Lease, Appellant had given Appellees a discount in the amount of $474.00 per month for 36 months.[36] As stated above, the Leases required Appellees to repay the discounted fees should they default on the lease. Specifically, pertinent excerpts of Section 16 of Exhibit A under the Lease Agreements states that, "...Should Tenant violate or in default under this lease at any time, Tenant shall immediately repay such discount in its entirety to Landlord upon demand by Landlord."[37] As such, the Leases specifically allow Appellant to make demand for repayment of the reduced fees when and if Appellees. Lastly, the Lease Agreements authorized Appellant, in its discretion, to make demands for any and all of the

---

[30] R.R. Vol. 6, Appellant's Trial Exhibits "3" and "4", the Leases.
[31] *See* Appellant's Trial Exhibits "3" and "4," Article XXII, Section 22.8.
[32] R.R. Vol. 3, pg. 54 lines 21-22.
[33] *Id.*
[34] R.R. Vol. 6, Appellant's Trial Exhibit "3."
[35] R.R. Vol. 6, Appellant's Trial Exhibit "3."
[36] R.R. Vol. 6, Appellant's Trial Exhibit "4."
[37] R.R. Vol. 6, Appellant's Trial Exhibits "3" and "4", the Leases.

unpaid rent and fees at any time, which Appellees confirmed they understood.[38]

Consequently, the evidence does not support the jury's answers in finding that Appellant breached the Leases by exercising Appellant's rights and default remedies under the Leases. The Leases specifically authorized Appellant, at his discretion, to provide estimate water bills to Appellees. Appellant exercised its right to estimate water bills and to give credit to any overage that Appellees paid. The Lease Agreements also authorized Appellant to charge for a signage fee when Appellees use the pylon structure provided by Appellant. The fact that Appellant waived his right to require a separate sign agreement does not waive his right to collect payment. The Leases also authorized Appellant, at his discretion, to make demands for late fees and interests on unpaid rents. Lastly, Appellees agreed to and Appellant exercised his right to make demands for the reduced rent amounts that were provided to Appellees at the commencement of the Leases.[39] Therefore, the evidence shows that Appellant did not breach the Leases by exercising his contractual rights by making demands for unpaid rents, water bills, signage fees and late fees and/or interests, even though no interest was demanded. Also, Appellant did not breach the Leases by making demands, after Appellees' default, for the reduced rent and common area maintenance (CAM).

### iv. Appellant did not breach the Leases by demanding payment for signage

The trial court evidence does not support the jury's answers under questions 2 and 5. Any evidence regarding the lack of a separate signage agreement is irrelevant especially when the Leases specifically state that Appellees must present Appellant with a sketch of the sign prior to

---

[38] R.R. Vol. 4, pg. 176, lines 10-24.
[39] R.R. Vol. 6, Appellant's Trial Exhibits "8," "10," "13," 16, and "21", letters from Appellant to Appellees requesting payment of unpaid rent, water bills, signage fees and final demands. Please note that the differences in the amount of demands reflect different various items for which Landlord was authorized to request payment.

installing the sign, which Appellees failed to do. Even if the jury concluded that Appellant and Appellees should have entered into a separate sign agreement, it is trivial and no more than a scintilla of evidence against overwhelming fact of the case and that it is no evidence at all.[40]

**B. The trial court erred and abused its discretion by failing to disregard the jury's answers to questions numbers 3 and 6 because the evidence was conclusive that, as a matter of law, Appellees did not have the right to an implied covenant of quiet enjoyment and Appellant did not constructively evict Appellees from the leased premises.**

A Court should grant a JNOV if an issue contrary to the jury's finding was established as a matter of law.[41] For a trial Court to disregard a Jury's findings and grant a motion for JNOV on the evidence, it must determine whether the evidence established an issue as a matter of law, and the Jury was not free to make contrary findings.[42] The Texas Pattern Jury Charges require that when both parties breached, the question would be who breached first. Jury questions 3 and 6 in this case pertain to whether Appellees or Appellant breached first. Having answered that both parties breached on both contracts, the Jury found that Appellant breached first.

The evidence does not support the jury's answers to questions 3 and 6; but to the contrary, the evidence was conclusive, irrespective of the signage fee issue, that Appellees breached the Leases first by: (1) failure to pay rent on time; (2) failure to pay water bills and signage fees on time; (3) failure to pay rent, late fees and CAM upon demand by Appellant; (4) failure to repay reduced rent amounts upon default; (5) failure to obtain Appellant's written consent prior to making alterations to both leased premises; (6) failure to obtain proper insurance coverage for both leased premises; (7) failure to return both leased premises to their original

---

[40] *Tabrizi v. Daz-Rez Corp.,* 153 S.W.3d 63, 66 (Tex.App-2004, no pet.); *Rush v Barrios,* 56 S.W.3d 88, 94-95 (Tex.App-Houston [14th Dist.] 2001, pet. denied)

[41] *Gallas v. Car Biz, Inc.,* 914 S.W.2d 592, 593 (Tex.App-Dallas 1995, writ denied); *See John Masek Corp. v. Davis,* 848 S.W.2d 170, 173 (Tex.App.--Houston [1st Dist.] 1992, writ denied); and *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990).

[42] *John Masek Corp. v. Davis,* 848 S.W.2d 170, 173 (Tex.App.--Houston [1st Dist.] 1992, writ denied); *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987); *Navarette v. Temple Indep. School Dist.,* 706 S.W.2d 308, 309 (Tex.1986); and *Gerdes v. Mustang Exploration Co.,* 666 S.W.2d 640, 642 (Tex.App.--Corpus Christi 1984, no writ).

8

condition, after written notice requests by landlord; (8) failure to provide Appellant with a sketch of the sign prior to the installation; (9) failure to provide thirty (30) days notice prior to vacating both lease premises; and (10) removal of fixtures from both leased premises.

Assuming *arguendo* that the jury was correct in returning the verdicts that both parties breached the Leases, the evidence shows that Appellees breached first. First, Appellees breached the Leases by consistently making payments late.[43] Appellees' testimony that by sending payments by mail on or before the first or the fifteenth of each month is insufficient to show the payments were made timely per the Leases language.[44] Soon after occupying the leased premises at 1255 Eldridge, Appellees began making late payments. Post marks on numerous envelopes Appellees used to mail rent and water payments show that payments were consistently late and were not mailed out until after the first or the fifteenth of each month necessarily could not be received by Appellant timely.[45] Regardless of whether Appellant makes demand for the 10% late fee as authorized under Section 22.8, Article XXII of the Leases, late payments on a consistent basis is a default under the Leases. Even if Appellant accepted late payments, it did not waive any rights to collect late fees or any other remedy under the Leases.[46] Even if the jury erroneously found that Appellant breached the Leases by making demands for late payments, other unpaid rents, Appellees' failure to pay timely, pay water bills, signage fees and CAM, constitute first breach the Leases by virtue of their failure to paid said rents, bills and fees from the onset of their tenancy. Therefore, any finding by the jury that Appellant was the first to breach is contrary to the evidence presented at trial.

---

[43] R.R. Vol. 3, pg. 39 line 13 to pg. 40 line 19.
[44] R.R. Vol. 4 pg. 118 to pg. 123 line 21.
[45] *Id.;* R.R. Vol. 6, Appellant's Trial Exhibits Appellant's Trial Exhibit "22." Copies of envelopes and checks showing that even though the checks were back-dated, the checks were consistently mailed out after the due date, which was the first and the 15th of each month.
[46] R.R. Vol. 6, Appellant's Trial Exhibits "3" and "4" the Leases, Section A of Article XVI.

9

### i. Appellees' non-monetary Lease breaches

In addition to monetary defaults, from the onset of the Leases, Appellees defaulted on non-monetary lease provisions. As indicated in Appellees' Trial Exhibit "1", within weeks of occupying the lease premises, Appellees began making alterations to the leased premises at 1255 Eldridge Road.[47] Section 6.1 of Article VI of the Lease Agreements required Appellees to obtain written approval from Appellant prior to making alterations.[48] There is no evidence that Appellees provided Appellant with a written request prior to making alterations and improvements on the lease premises.[49] There was contradicting testimony regarding when Appellant first witnessed the alterations. However, Appellees conceded that there was no written request and Appellant testified that he did not have knowledge of the alterations until the construction had begun.**[50]** The evidence supports the finding that Appellees failed to provide written request and failed obtain Appellant's approval prior to initiating the remodeling or alterations on both leased premises.[51] Lastly, the first week that Appellees moved into 1255 Eldridge Road, they installed a pylon sign without Appellant's consent. Additionally, they failed to provide Appellant with a sketch of the sign prior to its installation pursuant to the Leases' language.[52] By failure to provide written request and obtain Appellant's approval before making changes and alterations to the properties and the sign, Appellees breached the Leases first, well within the first week of leasing 1255 Eldridge Road premises.

---

[47]R.R. Vol. 6, Appellees' Trial Exhibit "1." Pictures taken of the lease premises, showing that both leased premises had alterations and the premises were not put back in their original condition, such as the sheetrock, separating the two premises and the removal of the stage, as well as the replacement of the glass mirrors; Testimony at R.R. Vol. 3 pg. 58 lines 5-22.

[48] R.R. Vol. 6, Appellant Trial Exhibits "3" and "4." Section 6.1, Article VI of the Lease Agreement clearly states that, "Tenant shall not make any alterations, additions, or improvements to the demised premises without prior written consent of Landlord…", Testimony at R.R. Vol. 3 pg. 58 lines 5-22.

[49] R.R. Vol. 3 pg. 58 line 5 to pg. 59 line 7.

[50] *Id.;* R.R. Vol. 4 pg. 164 line 3 to pg. 165 line 24.

[51] *Id.*

[52] R.R. Vol. pg. 124 lines 11-22.

10

Appellees also non-monetarily breached the Lease Agreement by failing to insure the leased premises per their obligation under the Leases by obtaining an insurance policy that was one-half of the required minimal amount designated under the lease.[53] Section 17 of Exhibit "A" under the Leases requires that the minimal liability coverage under the lease is increased from $500,000 to $1,000,000 per incident and the minimal personal injury coverage is also increased to $1,000,000.00.[54] Nevertheless, Appellees failed to obtain coverage for the leased premises at 1243 Eldridge at all times and only obtained one-half of the coverage for the leased premises at 1255 Eldridge.[55] By failure to maintain the proper minimum coverage for the 1243 Eldridge lease and failure to maintain proper minimum coverage for the 1255 Eldridge lease, Appellees breached the Leases from the onset of the parties' relationship. Therefore, the trial evidence conclusively showed that Appellees breached the Leases first.

### ii. Appellant did not waive any rights under the Leases to delay demand payment from Appellees

Appellees testified at trial that Appellant's subsequent delayed demands for payment made upon Appellees constituted first breach and constructive eviction.[56] However, the evidence is contrary to this argument.

Under Section A of Article XVI of the Leases, the non-pursuit of any specific default remedy does not preclude Landlord from exercising its rights to any other default remedies, even if delayed.[57] It is undisputed that Appellant accepted late and underpaid rent and water payments and fees from Appellees. Appellees testified that by virtue of Appellant's acceptance of less than

---

[53] R.R. Vol. 3 pg. 57 line 1 to pg. 58 line 4.
[54] R.R. Vol. 6, Appellant's Trial Exhibits "3" and "4." Section 17, Exhibit "A" of the lease states that the insurance policy under Article IX of the Lease Agreements was increased from $500,000 to $1,000,000 for both liability coverage and for personal injury.
[55] R.R. Vol. 6, Appellant's Trial Exhibit "22," Copy of Defendant's insurance policy for $500,000 per incident and in aggregate.
[56] R.R. Vol. 4, pg. 139, line 4 to pg. 140, line 11.
[57] R.R. Vol. 6, Appellant's Trial Exhibits "3" and "4" the Leases.

full payments and or late payments, it and making later demands for these payments in full, they were constructively evicted; and, this fact supports their claim that Appellant first breached the Leases.[58] And, that by virtue of the Appellant's subsequent demands, Appellees were constructively evicted.[59]

Any evidence of Appellees' failure to obtain written permission prior to making alterations to the leased premises and prior to installing the sign is insufficient to show that Appellees should be excused from performance under these lease provisions and the jury could not consider this as evidence of Appellees' right of non-performance. By the plain language of the Leases, by allowing Appellees to continue with the alteration of the lease premises, Appellant did not waive its right to require Appellees to return the leased premises to their original condition. And, therefore, any demand by Appellant to do so does not constitute breach or support Appellees' claim of constructive eviction; and, the jury could not have considered such evidence.

### iii. The jury cannot consider Appellees' lack of sophistication as justification for noncompliance of the lease terms

Appellees' claim that they should be excused for noncompliance because they were novice commercial tenants and did not fully understand the terms of the Leases does not comport with well-established Texas law and is no evidence that the jury could consider in finding that the Appellant first breached the Leases.

Texas law is clear that courts do not undo done deals simply because the parties failed to negotiate favorable terms of an agreement. "Every person having the capacity to enter into a

---

[58] *See* Appellant's Trial Exhibit "22," Copies of envelopes and checks showing that even though the checks were back-dated, the rent checks were consistently mailed out after the due date, which was the first and fifteenth of each month and Appellant's Trial Exhibit "23," Copies of water bills that were being underpaid by Appellees.
[59] R.R. Vol. 4, pg. 139, line 4 to pg. 140, line 11.

12

contract, in the absence of fraud, misrepresentation, or concealment, must be held to have known that the words used in the contract and to have known their meaning, and he must be held to have known and fully comprehended the legal effect of the contract."[60] Appellees' testimony that they were unsophisticated commercial tenants does not constitute evidence that they should be excused from performance under the Leases' terms; and, therefore, any demands for payment by Appellant does not constitute breach or could possibly be the basis for a constructive eviction claim.

Appellees provided no evidence that could in any way support the jury findings that Appellant first breached the Leases, which was necessary to support the jury's answers to questions numbers 3 and 6.[61]

## C. **The trial court erred and abused its discretion by failing to disregard the jury's answer to question number 9 because the evidence was conclusive that, as a matter of law, Appellees did not have the right to an implied covenant of quiet enjoyment and Appellant did not constructively evict Appellees from the lease premises.**

A court should grant a JNOV if an issue contrary to the jury's finding was established as a matter of law.[62] For a trial court to disregard a jury's findings and grant a motion for JNOV on the evidence, it must determine whether the evidence established an issue as a matter of law, and the jury was not free to make contrary findings.[63] Evidence proffered at trial did not support the jury's answer to question number 9 that (1) Appellees have an implied warranty of quiet enjoyment, and (2) Appellant constructively evict Appellees. Accordingly, the trial court should have granted Appellant's motion for JNOV.

---

[60] *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 146 (Tex. App. – Houston [1st Dist.] 1986, no writ).
[61] *Anderson v. City of Seven Points,* 806 S.W.2d 791, 795 n. 3 (Tex.1991).
[62] *Gallas v. Car Biz, Inc.,* 914 S.W.2d 592, 593 (Tex.App-Dallas 1995, writ denied); *See John Masek Corp. v. Davis,* 848 S.W.2d 170, 173 (Tex.App.--Houston [1st Dist.] 1992, writ denied); and *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990).
[63] *John Masek Corp. v. Davis,* 848 S.W.2d 170, 173 (Tex.App.--Houston [1st Dist.] 1992, writ denied); *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987); *Navarette v. Temple Indep. School Dist.,* 706 S.W.2d 308, 309 (Tex.1986); and *Gerdes v. Mustang Exploration Co.,* 666 S.W.2d 640, 642 (Tex.App.--Corpus Christi 1984, no writ).

### i. As a matter of law, Appellees did not have an implied covenant of quiet enjoyment.

The trial court erred and abused its discretion by denying Appellant's Motion to Disregard Jury's Answer to question number 9 because the evidence conclusively shows that as a matter of law, Appellees did not have the implied covenant of quiet enjoyment. Texas law recognizes that unless expressly stated otherwise, every commercial lease contains an implied covenant that the tenant will have quiet use and enjoyment of the premises for the term of the lease.[64] However, the express terms of the lease may waive the implied covenant of quiet enjoyment of the leased premises.[65] In addition, landlords can assert a defense that the express terms of the lease permitted the landlord to interfere with the tenant's use of the property.[66] In other words, tenants can waive an implied covenant of quiet enjoyment if the express terms of the lease stated the parties' intent.

Texas law allows landlords to disclaim any implied covenant of quiet enjoyment. Under *Dallas Power & Light Company v. Cleghorn,* the Texas Supreme Court held that a landlord can assert the defense that the express terms of the lease disclaimed the implied covenant of quiet enjoyment.[67] Here, the bargained for lease terms clearly provide that Appellees could waive any right to implied covenant by failing to perform as agreed.

Section 22.5 under Article XXII of the Lease Agreements clearly expressed the parties' intent for Appellant to disclaim and for Appellees to waive any implied covenant of quiet enjoyment, if Appellees did not perform all of the covenants and agreements under the lease,

---

[64] *L-M-S Inc. v. Blackwell,* 233 S.W.2d 286, 289 (Tex.1950); *HTM Restaurants, Inc. v. Goldman, Sachs & Co.,* 797 S.W.2d 326, 328 (Tex. App.-Houston [14th Dist.] 1990, writ denied); R.R. Vol. 3, pg. 94 line 14 to pg. 95 line 22.
[65] *Lazell v. Stone,* 123 S.W.3d 6, 11–12 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).
[66] *Briargrove Shopping Center Joint Venture, Inc. v. Vilar, Inc.,* 647 S.W.2d 329, 334 (Tex.App.-Houston [1st Dist.] 1982, no writ).
[67] *Dallas Power & Light Company v. Cleghorn,* 623 S.W.2d 310, 311 (Tex.1981); and *L-M-S Inc. v. Blackwell,* 233 S.W.2d 286, 289 (Tex.1950).

14

including monetary and nonmonetary provisions. Specifically, Section 22.5 under Article XXII of the Leases states that:

> "Landlord covenants and agrees that, upon payment by Tenant of the rent and all other sums herein provided for, and upon the observance and performance of all the covenants and agreements on the Tenant's part to be observed and performed hereunder, Tenant shall, subject to the terms and provisions of this Lease, at all times during the continuance of this Lease have the peaceable and quiet enjoyment and possession of the demised premises."[68]

That is, Appellant covenants and agrees to provide the covenant of quiet enjoyment to Appellees, **if and only if**, Appellees pay all rent and comply with all the provisions of the Leases. Additionally, Article XVI of the Leases stated Appellant's remedies in case Appellees defaulted on the lease.[69] Among the other remedies, Appellees consented to actual interference by Appellant to take possession of the leased premises and to demand payments, as well as other performance, from Appellees.[70]

Evidence at trial showed that Appellees consistently failed to pay rent on time, failed to pay the full amount of rent, failed to pay water bills and signage fees, failed to pay late fees and CAM and failed to provide notice/sketches of sign installations and alterations.[71] Furthermore, Appellees breached the Leases from the onset by failing to maintain the minimum amount of insurance coverage for the 1255 Eldridge space and failed to obtain insurance on the 1243 Eldridge space and failed to obtain written consent by Appellant prior to making alterations to both leased premises and prior to installing signage on the pylon structure.[72] As such, Appellees failed to perform as agreed under the Leases; and, therefore, expressly waived any right to an implied covenant of quiet enjoyment. Accordingly, the jury could not have found that the

---

[68] R.R. Vol. 6, pg. 26 lines 65-68 and pg. 44 lines 65-68.
[69] R.R. Vol. 6, Appellant's Trial Exhibits "3" and "4", the Leases.
[70] R.R. Vol. 6 pg. 25 lines 25-68.
[71] R.R. Vol. 6, Appellant's Trial Exhibits "8," "10," "13," 16, and "21", letters from Appellant to Appellees requesting payment of unpaid rent, water bills, signage fees and final demands.
[72] R.R. Vol. 3 pg. 57 line 1 to pg. 58 line 4.

Appellees had any rights to such a covenant and was legally obliged to answer question 9 in the negative.

The jury found that Appellees breached the Leases as evidenced by its answers to questions 1 and 4. Therefore, Appellant had the absolute right to actual interference with Appellees' use and possession of the leased premises. Given the evidence at trial and the jury's answers that the Appellees breached the Leases, it was erroneous for the jury to conclude that Appellant breached the implied covenant of quiet enjoyment, when in fact Appellant had the right to actual interference in the event Appellees breached pursuant to the terms of the Leases. The trial court, as a matter of law, was obliged to grant Appellant's Motion to Disregard Jury's Answer to number 9 because Appellees did not have the right to an implied covenant of quiet enjoyment based on the expressed terms of the Leases and Appellees' consent to interference.

### ii. Appellant did not constructively evict Appellees.

The trial court erred and abused its discretion by denying Appellant's Motion to Disregard Jury's Answer to question number 9 because the evidence conclusively showed, as a matter of law, that Appellant did not constructively evict Appellees. Appellees have failed to prove the required elements under a constructive eviction cause of action.[73]

The elements of a cause of action for constructive eviction are (1) an intention on the part of the landlord that the tenant shall no longer enjoy the premises, (2) a material act by the landlord that substantially interferes with the tenant's intended use and enjoyment of the premises, (3) an act that permanently deprives the tenant of the use and enjoyment of the premises, and (4) abandonment of the premises by the tenant within a reasonable time after the

---

[73] *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995).

16

commission of the act.[74]   The evidence at trial conclusively shows that Appellees have not proved the first three (3) elements of constructive eviction.[75]

A constructive eviction occurs when the tenant leaves the leased premises due to conduct by the landlord which materially interferes with the tenant's beneficial use of the premises.[76] Constructive eviction essentially terminates mutuality of obligation under the lease terms because the fundamental reason for the lease's existence has been destroyed by the landlord's conduct.[77]

### iii. No evidence Appellant intended that the tenant shall no longer enjoy the premises.

There was no testimony or evidence entered at trial that Appellant intended for Appellees not to enjoy the leased premises. Intent may be inferred from the circumstances, such as changing the locks and informing a commercial tenant that she is not welcome on the property.[78] However, in *Quitta v. Fossati*, the appellate court held that even the landlord's threat to get the sheriff" to evict the tenants was not evidence of constructive eviction.[79]  The court explained that to support a finding of constructive eviction, there must be evidence of "some additional feature, such as harassing incidents disturbing to the tenant's peaceful possession and occurring on the property."[80]

In the case at bar, Appellant was simply exercising his rights under the lease to make written demands on the unpaid rent, late fees, water bills and signage fees. No evidence was

---

[74] *Lazell v. Stone*, 123 S.W.3d 6, 11–12 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).
[75] *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995).
[76] *Fidelity Mut. Life Ins. Co. v. Robert P. Kaminsky, M.D., P.A.*, 768 S.W.2d 818, 819 (Tex. App.—Houston [14th Dist.] 1989, no writ).
[77] *Downtown Realty, Inc. v. 509 Tremont Bldg., Inc.*, 748 S.W.2d 309, 313 (Tex. App.—Houston [14th Dist.] 1988, no writ).
[78] *Downtown Realty, Inc. v. 509 Tremont Bldg., Inc., 748 S.W.2d 309 at 312.*
[79] *Quitta v. Fossati*, 808 S.W.2d 636 (Tex. App.—Corpus Christi 1991, writ denied)
[80] *Quitta v. Fossati*, 808 S.W.2d 636, 643 (Tex. App.—Corpus Christi 1991, writ denied)

produced at trial to show that Appellant made any threat to evict Appellees from the leased premises. In fact, Appellees testified that the Appellant never threatened eviction.[81] Appellant simply demanded payment of unpaid rents and fees that he believed Appellees owed. Appellant only sent out "final notice" with turnover instructions since the 1255 Lease was ending.[82] Appellees utterly failed to offer any evidence Appellant's actions constituted constructive eviction.

> **iv.    No evidence that the Appellant performed a material act that substantially interferes with the Appellees' intended use and enjoyment of the premises.**

Appellees needed to provide evidence that the Appellant performed some material act by that substantially interfered with the Appellees' intended use and enjoyment of the premises.[83] There was no evidence at trial that Appellant entered the lease premises for any reason but to read the water sub-meters or interfere with Appellees' use and enjoyment of the property by locking them out. Demand letters, without such harassing incidents disturbing to the tenant's peaceful possession and occurring on the property, does not constitute a material act, rising to constructive eviction.[84]

> **v.    No evidence that Appellant's acts or omissions permanently deprived Appellees of use and enjoyment of the leased premises.**

In addition to the foregoing elements, to prove they were constructively evicted, the Appellees must have provided evidence that the Appellant performed or failed to perform some the act that permanently deprived the Appellees of the use and enjoyment of the premises.[85]

---

[81] R.R. Vol. 4, pg. 178, lines 11-18.
[82] R.R. Vol. 6, Appellant's Trial Exhibits "8" through "13," "15" and "16." (copies of written correspondence between Appellant and Appellees)
[83] *Lazell v. Stone*, 123 S.W.3d 6, 11–12 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).
[84] *Id.*
[85] *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995).

The Appellees testified that they considered the Appellant's demand for payment of unpaid rents and fees and the turnover instruction was how Appellant constructively evicted them.[86] Texas laws permit landlords to interfere with the tenant's use and enjoyment of the leased premises by changing the locks when Tenants fails to pay rent. Locking out the tenant for not paying rent does not qualify as constructive eviction as long as the lockout complies with notice provisions of the Texas Property Code Section 93.0002(f) or "the expressed terms of the lease."[87]

Here, Appellant did not lock the Appellees out of the leased premises, and did not even make threat of lockout even though it has the right to do so and to a number of other default remedies without giving notice.[88] Section 16.1 under Article XVI of the Leases clearly states that, "Upon the occurrence of any such events of default, Landlord shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever." Section 16.1 continues to list a number of remedies at Appellant's option, including but not exclusive to entering and taking possession of the leased premises, locking up the premises and making demands for the surrender of the leased premises. Although Appellant had these expansive options to interfere with Appellees' use and enjoyment of the leased premises, Appellees produced no evidence whatsoever that Appellant's behavior that matched that which is legally necessary to support a yes answer to constructive eviction. Thus, the evidence is contrary to Appellees' claim that Appellant's material act or omission substantially interfered with their use or enjoyment of the leased property. Therefore, the Jury's Answer to number 9 is contrary to the evidence produced at trial and the court erred when it refused to grant Appellant's motion to disregard the jury's answer to question number 9.

---

[86] R.R. Vol. 4, pg. 140, lines 8-16.
[87] Texas Property Code §93.0002(f); and *Lazell v. Stone*, 123 S.W.3d 6, 11–12 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).
[88] R.R. Vol. 3, pg. 198 line 4-20 and pg. 140 lines 8-16.

**D. The trial court erred and abused its discretion by denying Appellant's motion to disregard jury's questions 7, 8, and 11 because the evidence was conclusive, as a matter of law, that Appellees breached the Leases entitling Appellant to damages and attorney's fees.**

Appellees offered no evidence at trial that Appellant breached the Leases by simply exercising its rights under the Leases to demand payment of what it reasonably believed Appellees owed. Further, the evidence is conclusive that, as a matter of law, even if the jury found that Appellant breached his obligations under the contract, Appellees breached the Leases first by defaulting on monetary and nonmonetary provisions of the Leases from the onset.

The question here is whether the jury's answers to questions 7, 8 and 11 would have been proper under a directed verdict. And, in the absence of evidence supporting the jury's answers, was the trial court obligated to disregard the jury answers. Alternatively, there is no evidence in supporting Jury's Answers to questions 7, 8 and 11.[89]

The jury found that the Appellees breached the Leases.[90] That and the evidence presented at trial supports Appellant's claim that it should be granted damages and reasonable attorney's fees. Because there is no evidence to support the jury's finding that Appellant breached the Leases and or that Appellant breached first, Appellant should be awarded damages under question 7.  Because there is no evidence as a matter of law, the trial court was obligated to grant Appellant's Motion to Disregard Jury's Answer number 7 and award Appellant damages and award the Appellant reasonable attorney fees under question number 8 pursuant to §38.001 of the Texas Civil Practice & Remedies Code. In pertinent part, this code section states

> "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for:

---

[89] T.R.C.P § 301
[90] R.R. Vol. 5, pg. 32, lines 11-12, 19-20.

      (1)  rendered services;
      (2)  performed labor;
      (3)  furnished material;
      (4)  freight or express overcharges;
      (5)  lost or damaged freight or express;
      (6)  killed or injured stock;
      (7)  a sworn account;  or
      (8)  ***an oral or written contract.***

Emphasis added. In addition to statutory provisions of the C.P.R.C., the Leases allow the Appellant to collect attorney's fees on account of any breach or default by Appellees of the Lease. Section 16.5 under Article XVI of the Lease Agreements states that, "On account of any breach or default by Tenant in Tenant's obligations hereunder, it shall become necessary for Landlord to employ an attorney to enforce or defend any of Landlords rights and remedies hereunder.  Tenant agrees to pay any reasonable attorney's fees incurred by Landlord in such connection."[91] Because the jury found that Appellees breached both of the Leases, pursuant to C.P.R.C § 38.001 and as allowed for under the terms of the Leases, the trial court was obligated to disregard the jury's answer to questions number 8 and award Appellant attorney's fees.

There was sufficient evidence at trial that Appellees breached the Leases and the jury found so.  As a matter of law, Appellees have no implied warranty of covenant of quiet enjoyment and there was no evidence at trial that Appellant constructively evicted Appellees. Therefore, there is no evidence to support the jury's answer to question number 11 in awarding Appellees attorney's fees. Consequently, the trial court erred when it denied Appellant's Motion to Disregard Jury's Answer to question number 11.

    **E.  <u>The trial court erred when it denied Appellant's Motion for Instructed Verdict, because the there was no evidence to show that Appellant breached the Leases, breached the covenant of quiet enjoyment or constructively evicted Appellees.</u>**

The denial of a motion for directed verdict lays the foundation for challenging the

---

[91] R.R. Vol. 6, Appellant's Trial Exhibits "3" and "4" the Leases.

evidence on appeal by issues or points of error contending there was no evidence of certain fact or that a fact was established as a matter of law.[92] In reviewing a directed verdict, the appellate court can consider any reason the directed verdict should have been granted, even one that is not stated in the court's order or in Appellant's motion.[93] In reviewing the evidence, the court should determine whether there is any probative evidence to raise a fact issue.[94] The court must consider all evidence in the light most favorable to the party against whom the verdict was directed.[95] However, when the evidence conclusively proves a fact that establishes the movant's right to judgment in a motion for directed verdict, or that negates the nonmovant's right, the court should direct a verdict when reasonable minds can only draw one conclusion from the evidence.[96] As illustrated more clearly above, the trial court erred in denying Appellant's Motion for Directed Verdict (Motion for Instructed Verdict) because, taking the evidence in light best favorable to Appellees, the evidence clearly shows that Appellees breached the lease agreements on non-monetary provisions and monetary provisions. Further, the trial court erred in denying Appellant's Motion for Instructed Verdict because the evidence shows that Appellees did not have covenant of quiet enjoyment and Appellant did not constructively evicted Appellees.

Appellees alleged at trial that Appellant breached the Leases by making estimated demands for water usage.[97] Appellees further claimed that Appellant initiated the conflict by making unfair demands of unauthorized fees. Appellees further claimed that Appellant was not

---

[92] *Weidner v. Sanchez,* 14. S.W.3d 353, 366 (Tex.App-Houston [14th Dist.] 2000, no pet); *White v. Liberty Eylau ISD,* 920 S.W.2d 809, 813 (Tex.App-Texarkana 1996, writ denied).
[93] *Reyna v. First National Bank,* 55 S.W.3d 58, 69 (Tex.App-Corpus Christi 2001, no pet.); Also *See Gonzales v. Willis,* 995 S.W.2d 729, 740 (Tex.App-San Antonio 1999, no pet).
[94] *Porterfield v. Brinegar,* 719 S.W.2d 558, 559 (Tex. 1986).
[95] *White v. Southwestern Bell Telephone Co., Inc.,* 651 S.W.2d 260, 261 (Tex., 1983)
[96] *Vance v. My Apt. Steak House,* 677 S.W.2d 480, 483 (Tex.1984); and *Westchester Fire Insurnace Co. v. Admiral insurance Co.,* 152 S.W.3d 172, 191 (Tex.App-Fort Worth 2004, pet. filed 2-3-05).
[97] R.R. Vol. 4, pg. 33 lines 1-15, pg. 74, line 5 to pg. 75 line 25.

22

authorized to charge for the signage fees.[98] Additionally, Appellees claimed under section 3 of Exhibit A of the Lease Agreement that, *"If Tenant wishes to use any pylon sign or sign frame supplied by Landlord, Tenant will sign an agreement separate from this lease."* [99]

In this case, Appellees did not offer the necessary evidence to show that Appellant's actions or omissions constituted a breach of the Leases, breach of warranty of quiet enjoyment or that Appellant constructively evicted Appellees. The evidence and testimonies of witnesses were contrary to Appellees' claims.[100] Article VIII of the Lease Agreements authorized Appellant to charge Appellees an initial estimate of the water bill, and at a later time, adjust the estimate to more accurately reflected Appellees' usage.[101] Further, the evidence was conclusive that from the onset of the parties' contractual relationship Appellees breached several provisions of the Leases, both monetary and non-monetary.

Specifically, evidence at trial showed that Appellees breached several non-monetary default provisions of the Lease Agreements from the onset of the contractual relationship, including failing to maintain an insurance policy in accordance to the lease terms,[102] failing to obtain written consent from Appellant prior to making alterations to the leased premises[103], failing to present Appellant with a sketch of the pylon mounted sign placed on the premises, failing to allow landlord entry to the leased premises on various occasions, failing to perform a walk-through for the leases premises, [104] failing to restore the leased premises to its original condition subsequent to Appellant's written requests, failing to provide Landlord with a thirty-day notice prior to vacating both lease premises, and Appellees' removal of lighting fixtures

[98] R.R. Vol. 4. pg. 180 line 23 to pg. 182, line 3.
[99] R.R. Vol. 6, Appellant's Trial Exhibits "3" and "4" the Leases.
[100] R.R. Vol. 3 pg. 44 line 4 to pg 47 line 9.
[101] R.R. Vol. 6, Appellant's Trial Exhibits "3" and "4" the Leases.
[102] R.R. Vol. 3 pg. 57 line 6 to pg. 58 line 4.
[103] R.R. Vol. 3 pg. 58 line 5 to pg. 59 line 7.
[104] R.R. Vol. 3 pg. 70 line 24 to pg. 72 line 25, pg. 85, line 25 to pg. 86, line 2.

from both lease premises.[105] Additionally, evidence at trial showed Appellees breached numerous monetary provisions of the Leases over time, including but not exclusive to Appellees' failure to pay rent, water bills, signage fees, common area maintenance fees and late fees.[106] Because the trial court failed to make the determination of whether there is any probative evidence to raise a fact issue, it erred in denying Appellant's Motion for Instructed Verdict on Appellees' causes of action against Appellant for breach of contract, breach on covenant of quiet enjoyment and constructive eviction.[107]

Evidence at trial showed that Appellees breached the lease agreement on both monetary and non-monetary provisions. As such, Appellant was entitled to enforce the provisions of the Leases relative to remedy at its discretion.[108] Due to Appellees' breach of the Leases, they had no right to the covenant of quiet and enjoyment. Section 22.5 under Article XXII of the Leases clearly express the parties' intent for Appellant to disclaim and for Appellees to waive, any implied covenant of quiet enjoyment, if Appellees do not perform all of the covenants and agreements under the lease, including monetary and nonmonetary provisions. Specifically, pertinent part of Section 22.5 under Article XXII states that:

> "Landlord covenants and agrees that, upon payment by Tenant of the rent and all other sums herein provided for, and upon the observance and performance of all the covenants and agreements on the Tenant's part to be observed and performed hereunder, Tenant shall, subject to the terms and provisions of this Lease, at all times during the continuance of this Lease have the peaceable and quiet enjoyment and possession of the demised premises."[109]

Appellees offered no evidence to show Appellant breached the Leases, breached the implied covenant of quiet enjoyment or constructively evicted Appellees. Evidence regarding

---

[105] R.R. Vol. 3 pg. 58 line 25 to pg. 59 line 7, pg. 70 lines 10-22, pg. 63 lines 1-25.
[106] R.R. Vol. 3 at pg. 56 line 20-25; Appellant's Exhibit 16; Vol. 3 R.R. at pg. 90, line 1-12.
[107] *Porterfield v. Brinegar,* 719 S.W.2d 558, 559 (Tex. 1986).
[108] R.R. Vol. 6 pg. 25 lines 25-68; R.R. Vol. 4 pg. 43 lines 25-68.
[109] R.R. Vol. 6 pg. 26 lines 65-68; and Vol. 4 R.R. pg. 44 lines 65-68.

24

Appellant's written demands do not constitute a breach of contract or a breach of covenant of quiet enjoyment. Further, Appellant's final demand did not constitute constructive eviction, as stated fully hereinabove. Evidence regarding Appellant making demands for signage fees, water fees, utility fees, late fees, and interest are Appellant's rights stated in the Leases. Under the Leases' default provisions, Appellant may, at its discretion, exercise its right; and additionally, exercising one remedy does not waive or preclude Appellant's other contractual rights.[110]

Evidence that Appellees failed to provide Appellant a sketch of the pylon sign and obtain a separate signage contract only further shows that Appellees breached the 1255 Lease from the onset of that lease term. The 1255 Lease requires Appellees to provide Appellant a copy of the sketch of the sign and to enter into a separate signage contract prior to installing a sign on the property's pylon structure. Section 3 of Exhibit A of the Lease Agreement that, "If Tenant wishes to use any pylon sign or sign frame supplied by Landlord, Tenant will sign an agreement separate from this lease." [111] However, the requirement of a signage agreement apart from the lease is not a condition upon which Appellant had to comply prior to Appellant charging Appellees a signage fee. To argue that Appellant is required to get a signage agreement prior to collecting signage fee would allow Appellees to be unjustly enriched if the Appellees installed the signed without written approval and without requesting a signage agreement and without paying for the signage fees. Such argument from Appellees is contrary to the law and contrary to any reasonable interpretation of the 1255 Lease.

Because the trial court failed to consider all evidence and/or the lack of evidence and because it failed to find that Appellees offered no probative evidence that Appellant breached the Leases, breached covenant of quiet enjoyment or constructively evicted the Appellees, it erred in

---

[110] R.R. Vol. 6 pg. 25 lines 25-68; R.R. Vol. 4 pg. 43 lines 25-68.
[111] R.R. Vol. 4 pg. 72 line 10 to pg. 73 line 21.

denying Appellant's Motion for Instructed Verdict on same. Because Appellees' evidence had no probative value and Appellees offered no more than a scintilla of evidence supporting their claims, it is a matter of law that the trial court was obligated to grant Appellant's Motion for Instructed Verdict and dismiss Appellees' claims for breach of contract, breach of the covenant of quiet enjoyment and constructive eviction. Allowing these unsupported questions to be part of the jury questions was error by the trial court Therefore, Appellant respectfully requests this Court reverse the trial court's Amended Final Judgment in favor of Appellant in a manner that is consistent with the evidence.

## PRAYER

WHEREFORE, premises considered, Appellant prays that the Court grant its appeal and reverse the Amended Final Judgment, dated October 10, 2014 and order the trial court to find in favor of Appellant, and for such additional and further relief to which it may show itself justly entitled.


Respectfully submitted,

LAW OFFICES OF STEVEN TUAN PHAM

2500 Wilcrest Drive, Suite 300
Houston, Texas 77042
Ph:   (713) 517-6645
Fax: (888) 824-8539
Email: stevenphamesq@yahoo.com



By: */s/ Steven Tuan Pham*
Steven Tuan Pham
Texas State Bar #24052899
Vy-Vivian Nguyen
Texas State Bar #24073383
Attorneys for Appellant,
1221 Eldridge Road, Inc.

**CERTIFICATE OF COMPLIANCE**

I certify that this document was prepared with Microsoft Word 2007 and that, according to the program's word-count function; the sections included in TRAP 9.4(i)(1) contain 12,220 words.

LAW OFFICES OF STEVEN TUAN PHAM

2500 Wilcrest Drive, Suite 300
Houston, Texas 77042
Phone:   (713) 517-6645
Fax: (888) 824-8539
Email: stevenphamesq@yahoo.com


By: /S/ *Steven Tuan Pham*
Steven Tuan Pham

**CERTIFICATE OF SERVICE**

I, Steven Tuan Pham, hereby certify that I have served Appellees by and through their attorneys of record the foregoing instrument on January 20, 2015 pursuant to the Texas Rules of Civil Procedure as indicated below.

Ted A. Cox, P.C.
Attn: Jennifer Fleck, Attorney at Law
1225 W. 34th
Houston, TX 77018
Phone:  713-956-9400
*Via e-Filing Notification*

Ted A. Cox, P.C.
Attn: Ted A. Cox, Attorney at Law
1225 W. 34th
Houston, TX 77018
Phone:  713-956-9400
*Via e-Filing Notification*

LAW OFFICES OF STEVEN TUAN PHAM

2500 Wilcrest Drive, Suite 300
Houston, Texas 77042
Phone:  (713) 517-6645
Fax: (888) 824-8539
Email: stevenphamesq@yahoo.com

By: */S/ Steven Tuan Pham*
Steven Tuan Pham

29

# APPENDIX

Appellant's Motion for Instructed Verdict . . . . . . . . . Vol. 4 pg. 187 line 12 pg. – pg. 200 line 14

Appellant's Motion To Disregard Jury Answers…………………….…..CR Vol. 3 pp. 268 - 298

Amended Final Judgment . . . . . . . . . . . . . . . . . . . . . . . .. ……….... CR Vol. 3 pp. 311 – 312

Appellant's Notice of Appeal…………………………………….. CR Vol. 3 pp. 314 – 316